THOMAS R. BURKE (CA State Bar No. 141930)
    thomsburke@dwt.com
CAESAR KALINOWSKI (*pro hac vice*)
    caesarkalinowski@dwt.com
DAVIS WRIGHT TREMAINE LLP
505 Montgomery Street, Suite 800
San Francisco, California 94111
Telephone: (415) 276-6500
Facsimile: (415) 276-6599

CYDNEY SWOFFORD FREEMAN (CA State Bar No. 315766)
    cydneyfreeman@dwt.com
DAVIS WRIGHT TREMAINE LLP
865 S. Figueroa Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 633-6800
Facsimile: (213) 633-6899

Attorneys for Defendant
DAVID PHILIPPS

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD R. GALLAGHER,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID PHILIPPS and KENNETH JOHN BRAITHWAITE II, in his capacity as Secretary of the Navy,<br><br>Defendant. | Case No. **20 CV0993 JLS BLM**<br><br>**DEFENDANT DAVID PHILIPPS'S NOTICE OF MOTION AND SPECIAL MOTION TO STRIKE PLAINTIFF'S THIRD, FOURTH, AND FIFTH CAUSES OF ACTION**<br><br>[Cal. Code Civ. Proc. § 425.16]<br><br>[Request for Judicial Notice; Declaration of Thomas R. Burke with Exhibits A-B & 1-46 Filed Concurrently]<br><br>Date: October 15, 2020<br>Time: 1:30 p.m,<br>Crtrm.: 4D |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on October 15, 2020, at 1:30 p.m., in Courtroom 4D of the United States District Court for the Southern District of California, located in the Edward J. Schwartz Courthouse at 221 West Broadway, San Diego, CA 92101, defendant David Philipps will and hereby does move this Court, pursuant to California Code of Civil Procedure § 425.16, for an order striking the third, fourth, and fifth causes of action in plaintiff Edward R. Gallagher's complaint.

As set forth in more detail in the attached memorandum of points and authorities, the Court should dismiss Plaintiff's claims against Mr. Philipps because:

1.      California Code of Civil Procedure § 425.16 (the "anti-SLAPP statute") applies to each of Plaintiff's claims against Mr. Philipps because they all indisputably arise from Mr. Philipps's reporting about official government proceedings (Plaintiff's military charges and court martial proceedings), and involve a matter of public interest (Plaintiff's alleged crimes and subsequent public support from the President), all published in a public form.  *See* C.C.P. § 425.16(e)(2)-(4); Memorandum ("Mem.") § IV.

2.      Because the anti-SLAPP statute applies to each of Plaintiff's claims against Mr. Philipps, the burden shifts to Plaintiff to establish a probability that he will prevail as to each claim.  C.C.P. § 425.16(b)(1); Mem. § V.  Because Mr. Philipps challenges the legal sufficiency of Plaintiff's claims, Plaintiff must show he has alleged sufficient facts to raise a right to relief above the speculative level. *See Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018).  Plaintiff cannot meet his burden:

a.      Plaintiff's libel claims fail because: (1) Plaintiff fails to identify any specific defamatory statements, *see* Mem. § V.A.1; (2) the statute of limitations bars many allegations, *see* Mem. § V.A.2; (3) the articles at issue constitute a fair and true report of government proceedings against Plaintiff, *see* Mem. § V.A.3;

---

(4) Plaintiff cannot show any statement is substantially false, *see* Mem. § V.A.4; (5) other statements are non-actionable opinion, *see* Mem. § V.A.5; (6) other statements are not "of and concerning" Plaintiff, *see* Mem. § V.A.6; and (7) Plaintiff did not timely demand a correction and did not plead and cannot prove he suffered special damages, *see* Mem. § V.A.7.

b.      Plaintiff's intentional infliction of emotional distress ("IIED") claim against Mr. Philipps fails as duplicative of his libel claims.  The claim additionally fails because: (1) Mr. Philipps's truthful news reporting about Plaintiff's alleged war crimes was not sufficiently egregious to be actionable; and (2) he cannot prove that the reporting caused him "severe emotional distress."  *See* Mem. § V.B.

Accordingly, this Court should grant Mr. Philipps's anti-SLAPP motion, and dismiss Plaintiff's third, fourth, and fifth causes of action with prejudice.  *See* C.C.P. § 425.16(b)(1).  Mr. Philipps also requests that he be awarded his attorneys' fees and costs incurred in defending against this meritless lawsuit, pursuant to C.C.P. § 425.16(c), in an amount to be determined by subsequent motion.  In the alternative, if the Court decides that Plaintiff can meet his burden with respect to any of his claims against Mr. Philipps, or with respect to any specific statement identified in the complaint, Mr. Philipps requests that this Court grant his motion to strike as to the remaining claims and/or statements alleged against him.  *See Baral v. Schnitt*, 1 Cal. 5th 376, 393 (2016) (court may dismiss individual statements).

This motion is based on this notice; the attached memorandum of points and authorities; the concurrently filed request for judicial notice; the concurrently filed declaration of Thomas R. Burke with Exhibits A–B and 1–46; any other matters of which this Court may take judicial notice; all pleadings, files, and records in this action; and such other argument as this Court may receive at the hearing on this motion.

DATED: August 3, 2020

By:  /s/ *Thomas R. Burke*
Thomas R. Burke

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

# **TABLE OF CONTENTS**

Page

I.     INTRODUCTION ................................................................. 1

II.    STATEMENT OF FACTS .................................................... 3

       A.    Plaintiff's Charges and Trial ..................................... 3

       B.    Mr. Philipps's Reporting ........................................... 4

       C.    This Lawsuit ............................................................. 6

III.   STANDARD OF REVIEW ................................................... 7

IV.    SECTION 425.16 APPLIES TO PLAINTIFF'S CLAIMS ........... 8

V.     PLAINTIFF CANNOT SATISFY HIS BURDEN. ..................... 9

       A.    Plaintiff's Libel Claims Fail ....................................... 9

             1.    Plaintiff's Defamation Causes of Action Do Not
                   Identify Any Specific Defamatory Statements ........... 9

             2.    The Statute of Limitations Bars Many of Plaintiff's
                   Allegations ................................................... 11

             3.    Mr. Philipps's Statements Constitute a Fair and
                   True Report of the Government Proceedings
                   Against Plaintiff ............................................. 11

             4.    Plaintiff Cannot Show Any Statement Is False,
                   Much Less Substantially False ............................ 15

             5.    Certain Other Statements Are Non-actionable
                   Opinion ...................................................... 17

             6.    Other Statements Are Not "Of and Concerning"
                   Plaintiff ..................................................... 19

             7.    Plaintiff Did Not Demand a Correction or Plead
                   Compensable Damages and Cannot Plead or Prove
                   He Suffered Special Damages as Required by the
                   Statute ....................................................... 20

       B.    Plaintiff's Duplicative Emotional Distress Claim Must Be
             Stricken ..................................................... 22

VI.    CONCLUSION ........................................................ 24

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

**Cases**

*A.E.G. v. Snepp*,
   171 Cal. App. 4th 598 (2009) ........................................................................*passim*

*Baral v. Schnitt*,
   1 Cal. 5th 376 (2016) ........................................................................ 2

*Barry v. State Bar of Cal.*,
   2 Cal. 5th 318 (2017) ........................................................................ 9

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 7

*Blatty v. New York Times Co.*,
   42 Cal. 3d 1033 (1986) ................................................................ 20, 23

*Braun v. Chronicle Publ'g Co.*,
   52 Cal. App. 4th 1036 (1997) ........................................................ 7, 12

*Carver v. Bonds*,
   135 Cal. App. 4th 328 (2005) .......................................................... 13

*Colt v. Freedom Commc'ns*,
   109 Cal. App. 4th 1551 (2003) ........................................................ 13

*Comstock v. Aber*,
   212 Cal. App. 4th 931 (2012) .......................................................... 23

*Couch v. San Juan Un. Sch. Dist.*,
   33 Cal. App. 4th 1491 (1995) .......................................................... 22

*Cox Broad. Corp. v. Cohn*,
   420 U.S. 469 (1975) ........................................................................ 11

*Dorsey v. National Enquirer, Inc.*,
   973 F.2d 1431 (9th Cir. 1992) .......................................................... 14

*Ferlauto v. Hamsher*,
   74 Cal. App. 4th 1394 (1999) .......................................................... 17

ii

*Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,
  12 F. Supp. 2d 1068 (C.D. Cal. 1998) ................................................... 23

*Flowers v. Carville*,
  310 F.3d 1118 (9th Cir. 2002) ............................................................... 10

*Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec.*
  *Bd. of Culinary Workers*,
  542 F.2d 1076 (9th Cir. 1976) ............................................................... 10

*Freedom Newspapers v. Superior Court*,
  4 Cal. 4th 652 (1992) ...................................................................... 20, 21

*Gang v. Hughes*,
  111 F. Supp. 27 (D. Cal. 1953) .............................................................. 22

*Gates v. Discovery Comm'ns, Inc.*,
  34 Cal. 4th 679 (2004) ........................................................................... 11

*Gilbert v. Sykes*,
  147 Cal. App. 4th 13 (2007) ............................................................ 15, 22

*Glassdoor, Inc. v. Superior Court*,
  9 Cal. App. 5th 623 (2017) .................................................................... 10

*Gomes v. Fried*,
  136 Cal. App. 3d 924 (1982) ................................................................. 22

*Green v. Cortez*,
  151 Cal. App. 3d 1068 (1984) ............................................................... 15

*Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*,
  59 Cal. 4th 277 (2014) ........................................................................... 19

*Howard v. Oakland Tribune*,
  199 Cal. App. 3d 1124 (1988) ............................................................... 14

*Hughes v. Pair*,
  46 Cal. 4th 1035 (2009) ......................................................................... 23

*Hupp v. Freedom Commc'ns*,
  221 Cal. App. 4th 398 (2013) .................................................................. 9

*Hustler Magazine v. Falwell*,
  485 U.S. 46 (1998) ................................................................................. 22

iii

*Kulkarni v. Upasani*,
   2015 WL 12859718 (S.D. Cal. 2015) ................................................................. 8

*Masson v. New Yorker Magazine, Inc.*,
   501 U.S. 496 (1991) ............................................................................... 15, 16

*McClatchy Newspapers, Inc. v. Superior Court*,
   189 Cal. App. 3d 961 (1987) ................................................................... 11, 14

*Melaleuca Inc. v. Clark*,
   66 Cal. App. 4th 1344 (1998) .......................................................................... 16

*Milkovich v. Lorain Journal*,
   497 U.S. 1 (1990) ............................................................................................ 17

*Moore v. Navarro*,
   2004 WL 783104 (N.D. Cal. 2004) .................................................................. 8

*Mory v. City of Chula Vista*,
   2008 WL 360449 (S.D. Cal. 2008) ................................................................... 8

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ........................................................................ 9, 15, 16, 19

*Partington v. Bugliosi*,
   56 F.3d 1147 (9th Cir. 1995) ............................................................... 16, 17, 18

*Paterno v. Superior Court*,
   163 Cal. App. 4th 1342 (2008) ........................................................................ 14

*Philadelphia Newspapers, Inc. v. Hepps*,
   475 U.S. 767 (1986) ......................................................................................... 15

*Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*,
   890 F.3d 828 (9th Cir. 2018) ..................................................................... 1, 7, 9

*Potter v. Firestone*,
   6 Cal. 4th 965 (1993) ...................................................................................... 23

*Pridonoff v. Balokovich*,
   36 Cal. 2d 788 (1951) ...................................................................................... 22

*Reeves v. A.B.C.*,
   719 F.2d 602 (2d Cr. 1983) .............................................................................. 14

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

*Ringler Ass. v. Md. Cas.*,
  80 Cal. App. 4th 1165 (2000) ............................................................... 15

*Roberts v. McAfee, Inc.*,
  660 F.3d 1156 (9th Cir. 2011) .............................................................. 11

*Sarver v. Chartier*,
  813 F.3d 891 (9th Cir. 2016) ................................................................. 7

*Sipple v. Found. for Nat'l Progress*,
  71 Cal. App. 4th 226 (1999) .................................................... 9, 11, 13

*Smith v. Press Democrat*,
  2011 WL 5006463 (N.D. Cal. 2011) ................................................... 14

*Stop Youth Addiction v. Lucky Stores*,
  17 Cal. 4th 553 (1998) ......................................................................... 23

*Thomas v. Los Angeles Times Commc'ns, LLC*,
  189 F. Supp. 2d 1005 (C.D. Cal. 2002) ............................................. 18

*Tiedemann v. Superior Court*,
  83 Cal. App. 3d 918 (1978) ................................................................. 11

*U.S. v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ................................................................. 8

*Underwager v. Channel 9 Australia*,
  69 F.3d 361 (9th Cir. 1995) ................................................................. 17

*Vogel v. Felice*,
  127 Cal. App. 4th 1006 (2005) ..................................................... 15, 16

*Wallace v. McCubbin*,
  196 Cal. App. 4th 1169 (2011) ............................................................. 8

**Statutes**

Cal. Civ. Code § 47(d) ....................................................................... 11, 12

California Code of Civil Procedure § 425.16 .................................... 1, 1, 8

Civil Code § 48a ........................................................................... 2, 20, 21

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

Plaintiff is a Navy SEAL who stood accused of murder and other war crimes after members of his own platoon turned him in.  At his court martial, multiple witnesses testified that he committed atrocities, including stabbing a wounded captive.  Plaintiff ultimately was convicted of posing for photographs with the captive's dead body.  His case attracted widespread news coverage, intervention by the President of the United States, and led to the resignation of the Navy's top civilian leader.

The Navy Times first broke the news of Plaintiff's charges and the allegations against him.  Defendant David Philipps, a Pulitzer Prize-winning journalist, reported on the allegations against Plaintiff for *The New York Times*.  Mr. Philipps attended Plaintiff's court martial and wrote more than 30 meticulously sourced reports during the period September 15, 2018 to January 1, 2020 regarding Plaintiff's charges, court martial, partial acquittal, subsequent Navy punishment, President Trump's public intervention on his behalf, and the military fallout stemming from the President's unprecedented entanglement.

Plaintiff alleges that Mr. Philipps's articles—not his own admitted actions or the criminal proceedings—have ruined his reputation and caused him severe emotional distress, and brings causes of action for defamation and intentional infliction of emotional distress ("IIED") against Mr. Philipps.  *See* Compl. ¶¶ 96-115.  These claims are subject to California's anti-SLAPP law, C.C.P. § 425.16, which requires early dismissal of meritless claims that target a defendant's acts in furtherance of the right of free speech about government proceedings or a matter of public interest.

In this case, Plaintiff cannot meet his statutory burden as to his defamation and IIED claims against Mr. Philipps.  His defamation claims fail as a matter of law for several reasons.  *First*, Plaintiff's causes of action fail to identify any specific

defamatory statements, as required by law (though Mr. Philipps has done his best to identify which statements form the basis of Plaintiff's claims for the purposes of his following defenses).  *See* § V.A.1, *infra*.  *Second*, the one-year statute of limitations for defamation actions bars many of Plaintiff's likely allegations.  *See* § V.A.2, *infra*.  *Third*, Plaintiff's own complaint admits that Mr. Philipps sourced his articles by attending and reporting on official government proceedings and relying on government documents; consequently, the articles at issue constitute a fair and true report of government proceedings and documents and enjoy an absolute privilege from liability.  *See* § V.A.3, *infra*.  *Fourth*, for similar reasons, Plaintiff cannot show any statement is substantially false.  *See* § V.A.4, *infra*.  *Fifth*, many of the statements seeming to form the basis of Plaintiff's defamation claims are non-actionable opinion.  *See* § V.A.5, *infra*.  *Sixth*, many other statements from Mr. Philipps's articles are not "of and concerning" Plaintiff, as required for defamation charges.  *See* § V.A.6, *infra*.  *Finally*, even assuming any statement could surmount the first six defenses (none can), Plaintiff failed to adequately demand a correction and did not plead and cannot prove that he suffered any special damages, as required by California's correction statute, Civil Code § 48a.  *See* § V.A.7, *infra*.

Mr. Philipps accurately reported on Plaintiff's military charges and court martial, in which Plaintiff was convicted of lifting a teenager's dead body by the scalp to pose for a photograph, as well as the Navy's clash with the President over its subsequent decision to further punish Plaintiff after his court martial.  Under these circumstances, Plaintiff's attempt to target Mr. Philipps for his truthful reporting on a matter of great concern to the public is baseless and should be dismissed.  For all these reasons, Mr. Philipps respectfully requests that the Court strike Plaintiff's defamation and IIED claims against Mr. Philipps from the complaint, and award Mr. Philipps his mandatory attorneys' fees to be determined by separate motion.  C.C.P. § 425.16(c).

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Charges and Trial

Plaintiff Edward Gallagher is a retired Chief Petty Officer Navy SEAL who left active duty after his highly publicized and internationally followed court martial for war crimes.  Arrested in September 2018, the primary allegation against Plaintiff involved the murder of a wounded, captive teenage ISIS combatant in Iraq the year before.  After Plaintiff allegedly stabbed the teen in the throat and chest, he and other members of his platoon posed with the captive's corpse as a war trophy.  In a later message to a friend, Plaintiff provided context for the photograph: "Good story behind this, got him with my hunting knife."  *See* Compl. Ex. A.

Given the nature of the horrendous allegations, public interest in the United States' military efforts abroad, and the involvement of members of the elite Navy SEALs, news outlets quickly began reporting on the charges.  Starting with a Navy Times article on September 20, 2018,[1] Plaintiff's identity and the details of his alleged crimes were released within a month of his arrest.[2]  Sourced from materials "leaked to Navy Times," the semi-official publication detailed allegations that Plaintiff "stabbed a wounded Islamic State fighter in the body and neck until he died," "posed for a photograph next to the body," "faces a pair of aggravated assault charges," and "allegedly shot 'a noncombatant male person' and … a 'noncombatant female person.'"[3]

Plaintiff later pled not guilty to all charges, including violations of the Uniform Code of Military Justice ("UCMJ") Articles 80 (Attempted Murder), 92 (Violation of Lawful General Order), 112 (Drinking on Duty), 118 (Murder), 128

---

[1] *See* https://www.navytimes.com/news/your-navy/2018/09/20/navy-seal-in-brig-while-agents-probe-killing-in-iraq/.

[2] *See* https://www.navytimes.com/news/your-navy/2018/10/23/second-seal-arrested-in-war-crimes-probe/.

[3] *Id.*

(Aggravated Assault with a Dangerous Weapon), and 134 (General Article for obstruction, misconduct).  *See* Declaration of Thomas R. Burke ("Burke Decl.") Ex. B (Charging Sheet).  While he was awaiting trial, President Trump arranged for Plaintiff to be transferred out of strict confinement.  Even before court martial proceedings began, the President drew attention to the case by publicly identifying that he might pardon Plaintiff (and others).  *See* Burke Decl., Ex. 5, *available at* https://www.nytimes.com/2019/05/18/us/trump-pardons-war-crimes.html.

After multiple accusations of litigation misconduct levied against prosecutors and defense counsel, Plaintiff's trial ultimately commenced in June 2019.  During testimony on the captive murder charge, the prosecution's immunized lead witness—Corey Scott—recanted earlier testimony and indicated that *he* had killed the captive after Gallagher merely stabbed him in the neck.  Ex. 8 at 1.  Scott  told the jury that he testified because Plaintiff has "got a wife and family," and Scott did not think Plaintiff should "spend[] the rest of his life in prison."  Compl. ¶ 56.a.

On July 2, the jury found Plaintiff not guilty of multiple murders of civilians and other war crimes; however, it did find him guilty of unlawfully posing with a dead combatant.  Ex. 10 at 1.  Plaintiff was sentenced to a reduction in rank, prison time, and faced removal of his SEAL Trident; however President Trump intervened on multiple occasions in the fall of 2019 to reverse the Navy's actions.  Exs. 5; 21 at 1; 28 at 3-5.  Ultimately, this unprecedented intervention allowed Plaintiff to retire with full rank and entitlements in December 2019, Exs. 25 at 25 at 3; 28 at 5, and prompted the resignation of the Secretary of the Navy, Exs. 24 at 1; 28 at 5-6.

## B.   Mr. Philipps's Reporting

Defendant David Philipps is a Pulitzer Prize-winning author and journalist. Since 2014, Mr. Philipps has worked as a national correspondent for The New York Times (the "Times")—focusing largely on the unintended consequences of the wars in Iraq and Afghanistan.  As a result, Mr. Philipps's coverage of the wars routinely involves investigating and covering issues of public concern like Plaintiff's charges

and court martial (the "Gallagher Proceedings"). Here, Mr. Philipps attended the court martial proceedings and interviewed Navy SEALs, government agents, and civilian witnesses in order to further verify and provide information for the articles at issue. *See, e.g.*, Compl. ¶¶ 36.c, 38, 59.a.

Beginning on November 15, 2018, Philipps published 31 articles reporting on the charges against Plaintiff, the court martial, and the battle between Trump and the Navy over the Navy's planned punishment for Plaintiff—often focusing on the controversy surrounding Plaintiff rather than the Plaintiff himself (the "Articles"). *See* Burke Decl. ¶ 9, Exs. 1-31.[4]

As alleged in the complaint, during the entire time that Mr. Philipps reported on the Gallagher Proceedings, Plaintiff's attorneys contacted Mr. Philipps or the Times about purported inaccuracies in just **two** articles. *See* Compl. ¶¶ 80, 85 & Exs. A-B. And those two communications came only after (1) the Times already had published 27 of the Articles containing all material allegations and (2) more than 14 months had passed since Plaintiff first was charged publicly with the crimes. *See, e.g.*, Exs. 1-23, 25-29. In the first instance, Plaintiff's attorney sent an email "really ask[ing] that [Philipps] and [his] colleagues exercise more responsibility when reporting on this case." *See* Compl., Ex. A. Attached to the email was a redline version of Mr. Philipps's November 30, 2019 article titled "Trump's Intervention in SEALs Case Tests Pentagon's Tolerance"; the redline largely added qualifying language. It did not dispute a single material allegation contained in Mr. Philipps's article. *See id.*

The second time, on January 1, 2020, Plaintiff's attorney sent another redline by email with a note asking that he "treat this as a request to correct all of the factual inaccuracies and misleading descriptions" purportedly contained in Mr.

---

[4] Paragraph 9 of the Burke Declaration contains a complete list of and hyperlinks to each of the 31 articles.

1  Philipps's December 31, 2019 article titled "From the Brig to Mar-a-Lago, Former

2  Navy SEAL Capitalizes on Newfound Fame." *See* Compl. Ex. B. Once again,

3  Plaintiff's counsel failed to meaningfully dispute a single material allegation in the

4  article. Instead, Plaintiff simply claimed the articles and reporting were slanted

5  because Mr. Philipps was "trying to pursue an agenda." *See* Compl. Ex. A.

6  **C.   This Lawsuit**

7       On May 29, 2020, Plaintiff filed his complaint now before this Court. Dkt. 1.

8  Gallagher premises his IIED and defamation claims on statements Philipps made in

9  21 articles, 2 podcast appearances, and 2 television appearances (the "Philipps

10 Statements"). *See id.* ¶¶ 36-85; Burke Decl. Ex. A (Statements Chart).[5] Plaintiff's

11 complaint largely declines to identify any specific false statements from the

12 majority of the Philipps Statements, instead claiming that Articles are "so

13 hopelessly riddled with falsities" that Plaintiff cannot recount all the issues. *See,*

14 *e.g.*, Compl. ¶¶ 39, 60, 63, 73, 75, 76, 79, 80, 85. Where Plaintiff does point to

15 specific statements, he largely identifies immaterial discrepancies, conflicts in the

16 various witnesses' testimony, allegations regarding separate individuals, or his

17 disputes with Mr. Philipps's opinion regarding disclosed facts. *See* Burke Decl. Ex.

18 A (Statements Chart).

19      As explained below, Plaintiff's insufficient allegations regarding his

20 defamation and IIED claims against Mr. Philipps do not support liability under a

21 number of defenses. Instead, the true aim of Gallagher's lawsuit is revealed: to

22

23      [5] Though Plaintiff is obligated to state with specificity each statement
24 challenged, he has not done so. *See* § V.A.1, *infra*. Accordingly, for the Court's
   convenience, counsel to Mr. Philipps has prepared a chart identifying each of the
25 more than 60 separate statements in the complaint that Plaintiff *appears* to allege is
   false, along with the legal defenses applicable to each statement as argued in this
26 memorandum (the "Statements Chart"). The Statements Chart is attached as
   Exhibit A to the Burke Declaration. In substantively rebutting the statements
27 below, Mr. Philipps will refer to the Statement Chart's groupings, pulling out
28 specific statements as examples.

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

**DAVIS WRIGHT TREMAINE LLP**
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

1  attempt to reframe the narrative of his admitted wrongdoings and criminal

2  proceedings by punishing Mr. Philipps's protected speech.

### III.   STANDARD OF REVIEW

4       California's broad anti-SLAPP statute provides a method for courts to

5  quickly dispose of meritless claims that target the exercise of free-speech rights.

6  C.C.P. § 425.16(a); *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1042

7  (1997).  Under the statute, any "cause of action against a person arising from any

8  act … in furtherance of a person's right of … free speech … in connection with a

9  public issue shall be subject to a special motion to strike, unless the court

10 determines that the plaintiff has established that there is a probability that the

11 plaintiff will prevail on the claim."  C.C.P. § 425.16(b)(1).  To evoke the anti-

12 SLAPP statute, the moving party first must show the plaintiff's claims arise from

13 protected speech under the statute.  *Sarver v. Chartier*, 813 F.3d 891, 901 (9th Cir.

14 2016).  Once the defendant makes such a showing, a court must look to the merits

15 of the plaintiff's claims.  *Id.*

16      Federal courts may consider arguments based on the anti-SLAPP statute at

17 either the motion-to-dismiss or the summary-judgment stage.  *See Planned*

18 *Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th

19 Cir. 2018), *cert. denied*, 139 S. Ct. 1446 (2019).  When, as here, "an anti-SLAPP

20 motion to strike challenges only the legal sufficiency of a claim, a district court

21 should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider

22 whether a claim is properly stated."  *Id.* at 834.  Accordingly, to survive an anti-

23 SLAPP motion challenging the complaint's legal sufficiency, a plaintiff must allege

24 sufficient facts to raise a right to relief above the speculative level—that is, a claim

25 to relief that is plausible on its face.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-

26 56 (2007).  If the plaintiff fails to satisfy the pleading standards under Rule

27 12(b)(6), the Court must strike the claim and award the movant its attorneys' fees.

28 *Planned Parenthood*, 890 F.3d at 834; C.C.P. §§ 425.16(b)(1), (b)(2), (c)(1); *cf.*

*Kulkarni v. Upasani*, 2015 WL 12859718, *13-*17 (S.D. Cal. 2015) (Sammartino, J.) (granting anti-SLAPP motion and noting mandatory attorneys' fees for prevailing parties), *aff'd*, 659 F. App'x 937 (9th Cir. 2016), *cert. denied*, 137 S. Ct. 2243 (2017); *Mory v. City of Chula Vista*, 2008 WL 360449, *9-*11 (S.D. Cal. 2008) (Sammartino, J.) (same). [6]

Here, Plaintiff appears to challenge multiple statements within two defamation claims. The Court must strike any statements in the complaint that cannot overcome Mr. Philipps's legal defenses. *Wallace v. McCubbin*, 196 Cal. App. 4th 1169, 1209 (2011) ("in response to an anti-SLAPP motion brought as to an entire complaint containing several causes of action, a *part* of a cause of action could be struck because the plaintiff failed to establish a probability of prevailing *as to that particular part*") (citation omitted).

## IV.   SECTION 425.16 APPLIES TO PLAINTIFF'S CLAIMS

Section 425.16(e)(2) extends the anti-SLAPP statute to "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." It is indisputable that Plaintiff's claims against Mr. Philipps comfortably fall within the protection of the anti-SLAPP statute, because they are based entirely on Mr. Philipps's reporting and published articles regarding the investigations into Plaintiff's conduct and subsequent court martial, as well as President Trump's repeated interventions on behalf of Plaintiff both before and after

---

[6] In ruling on a Rule 12(b)(6) motion to dismiss, a court may consider "[d]ocuments whose contents are alleged in the Complaint, and whose authenticity no party questions, but which are not physically attached to the pleading." *Moore v. Navarro*, 2004 WL 783104, at *2 (N.D. Cal. 2004) (Chesney, J.); *see also U.S. v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003). Plaintiff's complaint frequently refers to the Articles Mr. Philipps wrote regarding the Gallagher Proceedings, which accordingly are incorporated by reference. Copies of the Articles are verified in and attached to the Burke Declaration as Exhibits 1-31. *See also* RJN at I.

the court martial. *See also* Mem. § II.B. Moreover, Mr. Philipps meets his burden under Section 425.16(e)(4) as well, which extends the statute to "any other conduct in furtherance of the exercise of … the constitutional right of free speech in connection with a public issue or an issue of public interest." C.C.P. § 425.16(e)(4). "[N]ews reporting is free speech" under the anti-SLAPP statute, *Sipple v. Found. for Nat'l Progress*, 71 Cal. App. 4th 226, 240 (1999)), and Plaintiff concedes that the Articles relate to an "issue of public interest," *e.g.*, the "highly publicized ... investigation and prosecution against [Plaintiff]," Compl. ¶ 1.[7]

## V.    PLAINTIFF CANNOT SATISFY HIS BURDEN.

Because the anti-SLAPP statute applies to Plaintiff's defamation and IIED claims against Mr. Philipps, the burden shifts to Plaintiff to establish a probability of prevailing. C.C.P. § 425.16(b)(1). Because Mr. Philipps challenges the legal sufficiency of Plaintiff's claims, Plaintiff must show that his claims are facially plausible. *See Planned Parenthood*, 890 F.3d at 834; *Barry v. State Bar of Cal.*, 2 Cal. 5th 318, 325-26 (2017) (court may cleanly dismiss a plaintiff's complaint (or portions of it) if the plaintiff has no probability of prevailing). Plaintiff cannot meet this burden.

### A.    Plaintiff's Libel Claims Fail

### 1.    Plaintiff's Defamation Causes of Action Do Not Identify Any Specific Defamatory Statements

Regardless of how a plaintiff's complaint is pleaded, each statement alleged to be defamatory must be separately evaluated, and any non-actionable statement stricken. *See New York Times v. Sullivan*, 376 U.S. 254, 285 (1964) (courts must review the actual statements alleged to be defamatory to determine if they are "of a character which the principles of the First Amendment … protect"). Where, as

---

[7] This lawsuit further satisfies C.C.P. § 425.16(e)(3), which protects statements "made in a … public form in connection with an issue of public interest." *See Hupp v. Freedom Commc'ns*, 221 Cal. App. 4th 398, 405 (2013).

here, a plaintiff seeks damages for conduct protected by the First Amendment, "the danger that the mere pendency of the action will chill the exercise of First Amendment rights requires more specific allegations than would otherwise be required." *Flowers v. Carville*, 310 F.3d 1118, 1130 (9th Cir. 2002) (quoting *Franchise Realty Interstate Corp. v. San Francisco Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1082–83 (9th Cir. 1976)).  Thus, to assert a claim for defamation, the Plaintiff must plead "the precise statements alleged to be defamatory, who made them and when." *Id.* at 1131.  *See also Glassdoor, Inc. v. Superior Court*, 9 Cal. App. 5th 623, 636 (2017) (the court "must determine whether a prima facie showing of actionable statements has been made," and "[i]t is impossible to perform such a task without knowing the *exact statements* on which liability is predicated") (emphasis added).

Plaintiff's complaint pleads two separate counts for defamation: one for "defamation," Compl. ¶¶ 96-102, and one for "defamation by implication," *id.* ¶¶ 103-111.  Neither count identifies *any* specific statements as the subject of either claim.  His causes of action state only that Mr. Philipps "published numerous false statements about Chief Gallagher to the public," *id.* ¶ 97, and "published numerous articles that were intended to and reasonably understood to imply that Chief Gallagher was actually guilty of the crimes of which he was exonerated," *id.* ¶ 104, without identifying *which* statements are the basis of either claim.  Plaintiff's complaint must be dismissed as a matter of law on these grounds.  *Flowers*, 310 F.3d at 1130-31.

Each cause of action's reference to and "incorporation" of Plaintiff's earlier allegations in insufficient.  Specificity is especially important here because, as detailed below, a number of the statements described earlier in his complaint are time-barred, and independently barred by Plaintiff's failure to demand a correction.  Under California law, Plaintiff's failure to specifically plead which statements are the basis of each defamation claim is fatal to both claims.  Even if this mere

"incorporation" were sufficient (it is not), the complaint references 10 purported publications as defamatory without proffering *any* specific statement from those publications.  *See* Compl. ¶¶ 39, 60, 63, 73, 75-80, 85.  Accordingly, Plaintiff's defamation claims against Mr. Philipps fail on their faces and must be stricken.

### 2. The Statute of Limitations Bars Many of Plaintiff's Allegations

Defamation claims are governed by a one-year statute of limitations.  C.C.P. § 340(c); *see also Roberts v. McAfee, Inc.*, 660 F.3d 1156, 1169 (9th Cir. 2011).  All of Plaintiff's claims as to Mr. Philipps's April 23, 2019 and April 25, 2019 articles in *The New York Times*, as well as any claims related to statements Mr. Philipps made in April 2019 interviews, *see* Compl. ¶ 38, fail on their face because Plaintiff did not file his complaint until May 29, 2020.  Dkt. 1.  Accordingly, any claims based on allegations against publications prior to May 29, 2019 are time-barred and must be dismissed.  *See* Compl. ¶¶ 36-39; Burke Decl. Ex. A (Statements Chart).

### 3. Mr. Philipps's Statements Constitute a Fair and True Report of the Government Proceedings Against Plaintiff

California law provides absolute protection for fair and true reports of official proceedings and records.  *See* Cal. Civ. Code § 47(d); *McClatchy Newspapers, Inc. v. Superior Court*, 189 Cal. App. 3d 961, 976-77 (1987).  Any doubts "are to be resolved in favor of a finding of privilege." *Tiedemann v. Superior Court*, 83 Cal. App. 3d 918, 925 (1978); *Sipple*, 71 Cal. App. 4th at 240-41 (granting anti-SLAPP motion and noting broad construction of privilege).  Additionally, the First and Fourteenth Amendments to the U.S. Constitution and Article I, § 2 of the California Constitution provide an *absolute* privilege for reporting about official records and proceedings.  *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495-96 (1975) (accurate report of court records was absolutely protected by federal constitution); *Gates v.*

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

1   *Discovery Comm'ns, Inc.*, 34 Cal. 4th 679, 696 (2004) (absolute First Amendment

2   privilege applied to news report about obscure public court record).[8]

3        The Articles challenged by Plaintiff come within this broad, absolute

4   privilege.  Plaintiff himself alleges that the Articles' reporting came from

5   government documents, military charges and proceedings, and other government

6   officials' statements regarding the Gallagher Proceedings.  *E.g.*, Compl. ¶ 1 ("This

7   action arises out of the highly publicized and fatally flawed investigation and

8   prosecution against [Plaintiff]."); *id.* ¶¶ 5-6 (alleging that the Navy provided official

9   documents to Mr. Philipps and that those documents "were the key to Philipps'

10   false reporting"); *id.* ¶ 8 (alleging that Mr. Philipps's "purpose behind these articles

11   was … to parrot the false narrative of the corrupt Navy officials"); *id.* ¶ 9 (alleging

12   that Mr. Philipps "[relied] upon selectively leaked documents"); *id.* ¶ 21 (discussing

13   Navy prosecutor's "press conferences in the hallway of the courthouse"); *id.* ¶¶ 23-

14   24 (alleging that various government officials "began illegally leaking documents to

15   various news reporters," including Mr. Philipps); *id.* ¶ 50 (asserting that Mr.

16   Philipps's June 3, 2019 article "repeated" claims from the Navy prosecutor); *id.*

17   ¶ 51 ("Defendant Philipps attended court every day of the trial and personally

18   observed the entire proceedings."); *id.* ¶ 57 (alleging that Mr. Philipps's "narrative"

19   came from "Navy sources").

20        A review of the Articles even compared to Plaintiff's own allegations makes

21   clear that Mr. Philipps's reporting closely tracked the underlying government

22   source material.  *Compare* Exs. 1-31 *with* Compl. ¶¶ 19-85.  *See also* Burke Decl.

23

24

25

26      [8] The privilege applies equally to public and non-public documents and

proceedings.  *See, e.g.*, *Braun v. Chronicle Publ'g Co.*, 52 Cal. App. 4th 1036, 1050

27 (1997) (newspaper report on confidential investigative audit held pursuant to the

Reporting of Improper Gov't Activities Act is subject to section 47(d) privilege;

28 such a confidential audit is an "official proceeding" covered by section 47(d)).

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

Ex. A (Statements Chart).[9]  Plaintiff fails to identify any specific statement that does not capture the "substance" or "gist" of these official proceedings, documents, and statements.  Instead, Plaintiff attempts to evade the absolute privilege by nit-picking individual phrases, taking statements out of context, or pointing out alleged errors that do not change the "gist" of the allegations against Plaintiff.

For example, at Compl. ¶ 57.b, Plaintiff takes issue with this sentence from a June 26, 2019 article: "When a prosecutor asked Special Operator Scott in court last week why he had waited until he was on the stand to assert that he had killed the captive [instead of Plaintiff], [Scott] replied that Chief Gallagher had a wife and family, and said, 'I don't think he should spend the rest of his life in prison.'" Plaintiff agrees that Special Operator Scott said the quoted statement in an official government proceeding against Plaintiff, but asserts that in reality, the response was "to a question by defense attorneys about why he had chosen to tell the full truth" on the stand.  *Id.*[10]  Even if Plaintiff's allegation is fully credited, the "gist" or "substance" of Mr. Philipps's reporting does not alter the absolute privilege.  *See Sipple*, 71 Cal. App. 4th at 244 (a news report is protected "if the substance, the gist, [or] the sting of the [allegedly] libelous charge be justified"); *Colt v. Freedom Commc'ns*, 109 Cal. App. 4th 1551, 1558-60 (2003) (privilege applied despite acknowledged errors in article's descriptions of details from SEC proceedings); *Carver v. Bonds*, 135 Cal. App. 4th 328, 351-52, 357-58 (2005) (article captured "essential point" of medical board records although it stated there were 22 complaints against plaintiff instead of only six).

---

[9] Moreover, at least 15 articles published by other news outlets during the court martial regarding the proceedings include the same allegations as Mr. Philipps's articles.  *See* RJN at 5:5-8:3.

[10] The article quoted is attached to the Burke Decl. as Ex. 9 and available at https://www.nytimes.com/2019/06/26/us/corey-scott-edward-gallagher-navy-seal.html.

Because the privilege is absolute, it "does not require the reporter to resolve the merits of the charges, ***nor does it require that he present the [plaintiff's] version of the facts***." *Dorsey v. National Enquirer, Inc.*, 973 F.2d 1431 (9th Cir. 1992) (emphasis added; quoting *Reeves v. A.B.C.*, 719 F.2d 602, 606-07 (2d Cr. 1983)). In *Paterno v. Superior Court*, 163 Cal. App. 4th 1342 (2008), the court rejected the plaintiff's argument that it could overcome the privilege because the defendant did not "place [the] legal proceeding in 'context' by including what [the plaintiff] considers are the 'key facts.'" *Id.* at 1355. "[J]ournalists may simply report the facts of proceedings without providing an explanation of those facts." *Id. See also Smith v. Press Democrat*, 2011 WL 5006463, at *5 (N.D. Cal. 2011) ("the fair and true report privilege does not require the Press Democrat to have presented plaintiff's side of her story or her 'key facts'"). In *Dorsey*, the court found an article based on a witness affidavit filed in court was absolutely privileged despite the newspaper's "failure to include statements that undercut [the witness'] credibility." 973 F.2d at 1435. Here, each of the relevant Articles written after Plaintiff's partial acquittal accurately reported that Plaintiff was acquitted of nearly all the charges against him. *See* Exs. 10-21, 23-31; *e.g.*, Ex. 29 (Dec. 27, 2019 article including that "Chief Gallagher was acquitted by a military jury in July of all but a single relatively minor charge, and was cleared of all punishment in November by Mr. Trump"). Mr. Philipps was not also required to include a long explanation of *why* and *how* Plaintiff was acquitted.

Finally, Plaintiff cannot evade the privilege by claiming that Mr. Philipps or the Navy is "biased" against him. Compl. ¶¶ 3-8. Plaintiff's suggestion of a conspiracy between Mr. Philipps and the Navy is both fanciful and legally irrelevant. *McClatchy Newspapers*, 189 Cal. App. 3d at 971 ("allegations of conspiracy" between newspaper and source of official information "do not pierce the protective shield embodied in the statute"); *Howard v. Oakland Tribune*, 199 Cal. App. 3d 1124, 1128 (1988) (news media's privilege is not defeated by a

showing of malice on the part of the source of the official records); *Green v. Cortez*, 151 Cal. App. 3d 1068, 1074 (1984) (same).

### 4. Plaintiff Cannot Show Any Statement Is False, Much Less Substantially False

To succeed on a defamation claim, the First Amendment and the anti-SLAPP statute place the burden on Plaintiff to show each complained-of statement is materially false. *See Sullivan*, 376 U.S. at 279–80; *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986); *Vogel v. Felice*, 127 Cal. App. 4th 1006, 1022-23 (2005). Truth is "a complete defense against civil liability, regardless of bad faith or malicious purpose." *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28 (2007) (quoting *Ringler Ass. v. Md. Cas.*, 80 Cal. App. 4th 1165, 1180 (2000)). In asserting a defense of truth, a "defendant is not required … to justify every word of the alleged defamatory matter." *Id.* Instead, it is sufficient if the "substance," "gist," or "sting" of the statement is true. *Id.* at 28; *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 516-17 (1991). Known as the "substantial truth" doctrine, a court must examine whether a statement "would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Masson*, 501 U.S. at 496, 517 (quoting R. Sack, *Libel, Slander, and Related Problems* 138 (1980)).

In this case, the First Amendment protects Mr. Philipps's statements as substantially true accounts of the court martial proceedings. *See* Burke Decl. Ex. A (Statements Chart); *see also* Mem. § V.A.3, *supra*.

*First*, Plaintiff's complaint ignores the truth in the gist or sting of Mr. Philipps's reporting—that Plaintiff was a Navy SEAL who bragged about killing a wounded teen-aged captive, was turned in by other SEALs, and admitted to killing unarmed civilians. *See* Compl. ¶¶ 36.f (elderly man), 36.h (little girl), Ex. A (admitting stabbing incident and claiming that "got him with my hunting knife" was a joke). Indeed, Plaintiff's complaint is so deficient that nowhere in the pleading

does Plaintiff deny killing the captive.  Plaintiff's own admitted misconduct is so injurious that a claim like "[Plaintiff] wanted … to clear houses and start firefights," *see id.* ¶ 36.d, does not change the "gist" or "sting" of the Articles' effect. Plaintiff's failure to plead any false statement that "would have a different effect on the mind of the reader from that which the pleaded truth would have produced" is fatal to his claims.  *See Masson*, 501 U.S. at 496, 517 (quoting Sack, at 138).  *See also Partington v. Bugliosi*, 56 F.3d 1147, 1161 (9th Cir. 1995) (rejecting lawyer's claim that book portrayed him in false light by misrepresenting court proceeding because the alleged factual misstatement "adds little if anything to the gist of [the] criticisms" and "tends to support the basic protected characterization").

    *Second*, many of the alleged falsities Plaintiff purports to identify are minor and non-actionable.  *See* Compl. ¶¶ 36.c (number of witnesses); 36.f (same); 52.b (same); 52.c (same); 56.c (distance); 57.b (order of statements); 57.d (amount of blood and number of stab wounds); 59.d (witnesses); 61.a (distance); 61.b (witnesses); 65.a (same); 84.a (same).  "Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified."  *See Vogel*, 127 Cal. App. 4th at 1021 (internal quotations omitted).  Whether, for example, one witness or two witnesses testified to a fact, or whether Gallagher drove two miles or one mile, does not materially alter the truth of the statements at issue.  Plaintiff's invocation of these purported minor inaccuracies fail as a matter of law.  *See id.* (plaintiff's burden is not met if "the statement appears *substantially* true" as minor inaccuracies are not actionable).

    *Third*, Plaintiff cannot support his allegations of falsity because no such evidence exists.  *See Sullivan*, 376 U.S. at 279–80; *Vogel*, 127 Cal. App. 4th at 1021.  Where the "disputed statements involve matters of public concern, the plaintiff in a defamation action bears the burden of showing the statements the defendant made were false."  *Melaleuca Inc. v. Clark*, 66 Cal. App. 4th 1344, 1355 (1998).  Not only has Plaintiff failed to provide any allegations specific to falsity

but his complaint often omits direct assertions of underlying falsity for many purportedly defamatory statements.  *See* Compl. ¶¶ 36.a (fails to challenge actual fact of indiscriminate shooting); 36.c (fails to challenge witnesses' "troubling" testimony); 36.f (fails to challenge murder of elderly man); 36.h (killing of little girl); 50.c (indiscriminate shooting); 52.a (ordering indiscriminate shooting); 52.b (little girl); 56.c (fails to challenge intentionally driving to kill captive); 57.d (stabbing a captive); 57.e (fails to challenge witnesses receiving death threats); 61.a (driving to kill person); 61.b (stabbing a captive); 61.b (same).  Plaintiff's failure to adequately plead falsity requires dismissal of his claims.

### 5.     Certain Other Statements Are Non-actionable Opinion

Plaintiff's allegations also fail because subjective comments, conjectural hyperbole, and conclusions drawn from disclosed facts are not actionable as a matter of law.  *See Milkovich v. Lorain Journal*, 497 U.S. 1, 20 (1990) ("statement of opinion" that does not contain "provably false factual connotation" is constitutionally protected); *Ferlauto v. Hamsher*, 74 Cal. App. 4th 1394, 1401 (1999) ("rhetorical hyperbole, vigorous epithets, lusty and imaginative expressions of contempt, and language used in a loose, figurative sense have all been accorded constitutional protection.").

The Ninth Circuit applies a three-step analysis to determine whether an article or published statement implies a provable factual assertion:

> First, we look at the statement in its broad context, which includes the general tenor of the entire work, the subject of the statements, the setting, and the format of the work.  Next we turn to the specific context and content of the statements, analyzing the extent of figurative or hyperbolic language used and the reasonable expectations of the audience in that particular situation.  Finally, we inquire whether the statement itself is sufficiently factual to be susceptible of being proved true or false.

*Underwager v. Channel 9 Australia*, 69 F.3d 361, 366 (9th Cir. 1995) (citing *Partington*, 56 F.3d at 1153).

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

Furthermore, "when an author outlines the facts *available to him*, thus making it clear that the challenged statements represent his own interpretation of those facts and leaving the reader free to draw his own conclusions, those statements are generally protected by the First Amendment" as non-actionable opinion. *Partington*, 56 F.3d at 1156-57 (emphasis added).  Importantly in cases like this, the Ninth Circuit has "cautioned that 'the First Amendment guarantees authors 'the interpretive license that is necessary when relying upon ambiguous sources.'" *Thomas v. Los Angeles Times Commc'ns, LLC*, 189 F. Supp. 2d 1005, 1015 (C.D. Cal. 2002) (citing *Partington*, 56 F.3d at 1154), *aff'd*, 45 F. App'x 801 (9th Cir. 2002).

*Thomas* is instructive.  There, the district court granted the defendant's anti-SLAPP motion and dismissed libel claims based on an article that questioned the plaintiff's account of his World War II experiences.  189 F. Supp. 2d at 1009.  In particular, the alleged defamatory article noted the additional basis for its opinion: it "compared several of Thomas' accounts of his role in historic events with other records and recollections."  *Id.* at 1016.  Dismissing the complaint, the court held that "[e]ven if [the author's] opinion is that Thomas lied and that opinion comes through in the article, that opinion is clearly based on a consideration of both sides of the story.  If the opinion is based on disclosed facts, it is not actionable." *Id.* at 1016.

Plaintiff repeatedly takes issue with Mr. Philipps's protected opinion concerning disclosed sources and facts.  *See* Compl. ¶¶ 36.b, 36.c, 36.d, 37, 38, 50.b, 52.c, 52.d, 57.a, 57.f, 59.b, 59.c, 60, 61.d, 62, 62.a, 63, 72.a, 73, 74.2, 75, 77, 78, 79, 80, 82.a, 84.b, 84.d, 85; Burke Decl., Ex. A (Statements Chart).  But nowhere does Mr. Philipps imply or expressly state false assertions of fact about Plaintiff regarding the proceedings and allegations contained therein.  *See* Mem. §§ V.A.3-4, *supra*.  Indeed, Mr. Philipps provided the basis for every allegation on the face of his reporting—public documents, witness testimony, leaked documents,

or other proceedings, *see, e.g.*, Compl. ¶¶ 36.c ("Investigators' interviews with more than a dozen members of Alpha Platoon, included in the Navy's criminal investigation report, as well as other interviews with SEALs, offer a more troubling portrait of the chief."), 38 ("I reached out to his family.  I spoke to his brother, I spoke to his wife, and I spoke at length about his record"), 59.a ("In court, some said they had started carrying weapons for self-defense.").  Plaintiff's complaint routinely challenges mere differences of opinion.

For example, Plaintiff takes issue with Mr. Philipps's statement that "[Mr. Philipps's] first hunch was that [the charged crimes] could have been some kind of psychotic break, caused by repeated deployments."  *Id.* ¶ 37.  Mr. Philipps's self-admitted "hunch" is not a fact that can be false and defamatory; it is protected opinion.  But regardless of whether Plaintiff (1) contests Mr. Philipps's subjective belief or word choices, *see, e.g.*, *id.* ¶¶ 38, 39, 57.a, 52.c, 57.f, 59.c, 60, 61.d, 84.b, (2) dislikes Mr. Philipps's perceived support for those opposed to him, *see, e.g.*, *id.* ¶¶ 50.b, 52.d, 62, 73, 75, or (3) disagrees with the Statements' purported "bias and intended narrative," characterizations, or lamentations, *see, e.g.*, *id.* ¶¶ 37, 60, 62.b, 72, 73, 82.a, the First Amendment protects Mr. Philipps's opinions and reporting based on disclosed sources and facts.

## 6.    Other Statements Are Not "Of and Concerning" Plaintiff

It is axiomatic that a defamation plaintiff must demonstrate that the allegedly defamatory statements or implications are "of and concerning" him specifically.  *See Sullivan*, 376 U.S. at 288; *Hartford Cas. Ins. Co. v. Swift Distrib., Inc.*, 59 Cal. 4th 277, 291 (2014) ("under the First Amendment … all injurious falsehoods must specifically refer to, or be 'of and concerning,' the plaintiff in some way") (quotation omitted).  As the California Supreme Court has explained:

> The "of and concerning" or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt …

the absence of the "of and concerning" requirement could invite any number of vexatious lawsuits and seriously interfere with public discussion of issues, or groups, which are in the public eye.

*Blatty v. New York Times Co.*, 42 Cal. 3d 1033, 1044 (1986) (quotation omitted).[11]

Plaintiff claims damages for a plethora of statements that are not "of and concerning" him.  *See* Burke Decl. Ex. A (Statements Chart).  Although the those statements may *reference* him or the Gallagher proceedings as a whole, they do not contain a factual assertion about *Plaintiff*, but rather some named or unnamed third party.  *See, e.g.*, Compl. ¶¶ 36.g, 56.b, 59.b, 62, 72.a, 72.b, 82.a, 82.c (re: government leadership); 50.a, 50.b (re: prosecutor), 52.c, 52.d, 57.b, 57.c, 57.d, 57.f, 59.c, 61.c, 61.d, 62.a, 63, 65.a, 82.b (re: witnesses).  Plaintiff cannot bring claims on others' behalf, even if they are generally related to the Gallagher Proceedings, and his claims based on such statements fail as a matter of law.

### 7. Plaintiff Did Not Demand a Correction or Plead Compensable Damages and Cannot Plead or Prove He Suffered Special Damages as Required by the Statute

California's correction statute requires a plaintiff suing for allegedly libelous statements published in a newspaper or online to demand a correction before bringing a lawsuit for general damages.  *Freedom Newspapers v. Superior Court*, 4 Cal. 4th 652, 654-56 (1992) (citing Civil Code § 48a).  Such a defamation plaintiff is required to serve a timely (within 20 days) "written notice specifying the statements claimed to be libelous" to the publisher and demanding that each statement or publication be corrected.  *Id.*  Absent this *specific* correction demand, the plaintiff is limited to recover only "special damages," *i.e.*, "damages that plaintiff alleges and proves that [plaintiff] has suffered in respect to [plaintiff's]

---

[11] The same requirement applies to Gallagher's claims for emotional distress.  *See Blatty*, 42 Cal. 3d at 1044-45 ("of and concerning" requirement is a "First Amendment limitation[] applicable to all claims … whose gravamen is the alleged injurious falsehood of a statement").

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

property, business, trade, profession, or occupation … and no other." Civ. Code § 48a(d)(2). Where a plaintiff fails to demand correction *and* is unable to adequately plead or prove special damages, the claims fail on their face and must be stricken under the anti-SLAPP statute. *A.E.G. v. Snepp*, 171 Cal. App. 4th 598, 643 (2009) (striking claims where plaintiff sent inadequate correction demand and "presented no proof of special damages").

It is clear from the complaint that Plaintiff falls short of this burden in three ways: (1) he fails to allege and cannot prove that he made timely demands for correction as to the vast majority of statements in his complaint; (2) the demands he did attempt to make were legally inadequate, and moreover, failed to identify any *false* statement to be corrected; and (3) Plaintiff fails to allege and cannot prove that he actually suffered any special damages from any of the specific statements that Plaintiff purports to challenge by his complaint. Consequently, his claims should be struck for this independent reason.

*First*, Plaintiff did not make any timely demand as to 19 out of the 21 total articles at issue in his complaint. Accordingly, he cannot recover general or punitive damages as to those articles or any statements therein. Civ. Code § 48a(d)(2).

*Second*, though Plaintiff's counsel did send Mr. Philipps emails regarding the November 30, 2019 and December 31, 2019 articles, neither email satisfies the requirements of Section 48a. *See* Compl. Exs. A-B. For example, the first email (regarding the November 30 article) simply asked that Mr. Philipps "exercise more responsibility when reporting on this case"—this falls short of the requirement that Plaintiff "demand[] that [specific libelous statements] be corrected." *See Freedom Newspapers*, 4 Cal. 4th at 654-56. His second email (regarding the December 31 article) did ask Mr. Philipps to "treat this as a request to correct all of the factual inaccuracies and misleading descriptions," but again identifies no specific, potentially libelous statements he contends are false. Compl. Ex. B. *Even if* both

emails are taken as proper demands (and none were sent to the publisher, as the statute also requires), *neither* email contested the material facts or identified any specific libelous statements contained for the first time in those articles. *See Gomes v. Fried*, 136 Cal. App. 3d 924, 937-38 (1982) (plaintiff cannot recover general damages for statements not specified in demand).

*Third*, Plaintiff has failed to plead or prove *any* concrete, quantifiable injury. His general and non-specific allegations regarding his purported injuries fall into two insufficient categories: (1) harm to his "reputation in the community, … significant mental and emotional anguish, being subject to ridicule and humiliation," Compl. ¶ 110, and (2) economic harm "in the form of lost speaking engagements and employment opportunities, time and travel expenses …, additional time away from work for his wife and travel expenses," *id.* ¶ 111. These boilerplate allegations are insufficient to plead special damages. *Gang v. Hughes*, 111 F. Supp. 27, 29 (D. Cal. 1953) ("general allegation of loss of business" not sufficient; "plaintiff must allege the specific manner in which he lost business as a result of the defamation"); *Pridonoff v. Balokovich*, 36 Cal. 2d 788, 792 (1951) ("general allegation of loss of a prospective employment, sale, or profit will not suffice").

Moreover, even where Plaintiff *attempts* to allege more specific harm, *see* Compl. ¶¶ 110, 111, as a matter of law, these alleged damages cannot be attributed to Mr. Philipps's reporting —which began months after the war crimes allegations against Plaintiff were publicly known. For all these reasons, Plaintiff's claims should be dismissed. *See A.E.G.*, 171 Cal. App. 4th at 643.

## B.     Plaintiff's Duplicative Emotional Distress Claim Must Be Stricken

Plaintiff's IIED claim fails for the same reasons as his defamation claims. *See Hustler Magazine v. Falwell*, 485 U.S. 46, 52-56 (1998); *Gilbert v. Sykes*, 147 Cal. App. 4th 13, 34 (2007) (striking duplicative IIED claim); *Couch v. San Juan Un. Sch. Dist.*, 33 Cal. App. 4th 1491, 1504 (1995) (IIED claims "based on the

1  same factual allegations as those of a simultaneous libel claim … are superfluous

2  and must be dismissed").[12]

3      The claim additionally fails because (1) none of the conduct alleged was

4  sufficiently egregious to be actionable; and (2) he cannot prove that the alleged

5  conduct caused him to suffer "severe emotional distress."  *First*, even if fully

6  credited, Plaintiff's allegations as to Mr. Philipps's conduct do not rise to the level

7  of egregiousness required to support a claim for IIED.  To state such a claim, "the

8  complained-of conduct must be outrageous, that is, beyond all bounds of reasonable

9  decency."  *Comstock v. Aber*, 212 Cal. App. 4th 931, 954 (2012).  This is an

10  exceedingly high standard.  *See Hughes v. Pair*, 46 Cal. 4th 1035, 1050-51 (2009)

11  ("defendant's conduct must be 'intended to inflict injury or engaged in with the

12  realization that injury will result'") (quoting *Potter v. Firestone*, 6 Cal. 4th 965,

13  1001 (1993)).  Mr. Philipps's accurate news reporting on the military's allegations

14  against plaintiff is simply not "outrageous" conduct that traverses "all bounds of

15  reasonable decency" as a matter of law.

16      *Second*, Plaintiff's IIED claim additionally fails because he cannot prove that

17  *Mr. Philipps's* alleged conduct caused him to suffer "severe emotional distress"

18  because generally-available Times' articles are not directed at him.  *Comstock*, 212

19  Cal. App. 4th at 954; *see also Hughes*, 46 Cal. 4th at 1051 ("plaintiff's assertions

20  that she has suffered discomfort, worry, anxiety, upset stomach, concern, and

21

22      [12] If Plaintiff wants to assert a claim regarding Mr. Philipps's alleged

23  statements, he must satisfy the constitutional requirements for defamation,

24  regardless of how he denominates his claim.  *See, e.g.*, *Blatty*, 42 Cal. 3d at 1042-43

25  (constitutional protections "are not peculiar to [defamation] actions but apply to all

26  claims whose gravamen is the alleged injurious falsehood of a statement"), *cert. denied*, 485 U.S. 934 (1988); *Films of Distinction, Inc. v. Allegro Film Prods., Inc.*,

27  12 F. Supp. 2d 1068, 1082 (C.D. Cal. 1998) (court must prevent "'creative pleading' from 'rendering nugatory the First Amendment limitations placed on

28  litigation against speech'") (quoting *Stop Youth Addiction v. Lucky Stores*, 17 Cal. 4th 553, 563 (1998)).

PHILIPPS'S SPECIAL MOTION TO STRIKE
Case No. 20 CV0993 JLS BLM

**DAVIS WRIGHT TREMAINE** LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111

agitation" did not meet IIED standard).  *See* Mem. § V.A.7, *supra*.  Therefore, the Court should dismiss this claim as well.

## VI.   CONCLUSION

Plaintiff's complaint is filled with inflammatory accusations about Mr. Philipps in an attempt to punish him for the Articles, but fails to allege any legal basis for which Plaintiff may receive relief.  Mr. Philipps respectfully requests that this Court grant the motion and strike Plaintiff's third, fourth, and fifth causes of action for defamation and IIED against Mr. Philipps with prejudice and award Mr. Philipps his mandatory fees and costs incurred in connection with this motion, in an amount to be determined by future motion.

DATED: August 3, 2020

DAVIS WRIGHT TREMAINE LLP
THOMAS R. BURKE
CYDNEY SWOFFORD FREEMAN
CAESAR KALINOWSKI

By: /s/ *Thomas R. Burke*
                Thomas R. Burke

Attorneys for Defendant
DAVID PHILIPPS

DAVIS WRIGHT TREMAINE LLP
505 MONTGOMERY STREET, SUITE 800
SAN FRANCISCO, CALIFORNIA 94111