UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

EDWARD R. GALLAGHER,

Plaintiff,

v.

DAVID PHILIPPS and KENNETH JOHN BRAITHWAITE II, in his capacity as Secretary of the Navy,

Defendants.

Case No.: 20-CV-993 JLS (BLM)

**ORDER (1) GRANTING DEFENDANT DAVID PHILIPPS'S REQUEST FOR JUDICIAL NOTICE AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANT DAVID PHILIPPS'S SPECIAL MOTION TO STRIKE PLAINTIFF'S SECOND THROUGH EIGHTH CAUSES OF ACTION, OR ALTERNATIVELY, TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

(ECF No. 26)

Presently before the Court are Defendant David Philipps's ("Defendant") Special Motion to Strike Plaintiff's Second Through Eighth Causes of Action, or Alternatively, to Dismiss Plaintiff's First Amended Complaint ("Mot.," ECF No. 26) and Request for Judicial Notice ("RJN," ECF No. 26-50), as well as Plaintiff Edward R. Gallagher's ("Plaintiff") Opposition thereto ("Opp'n," ECF No. 44) and Defendant's Reply in support thereof ("Reply," ECF No. 48). Having carefully considered Plaintiff's Amended

Complaint ("Am. Compl.," ECF No. 20), the Parties' arguments, and the law, the Court **GRANTS** Defendant's Request for Judicial Notice and **GRANTS IN PART AND DENIES IN PART** Defendant's Motion as follows.

**BACKGROUND**

Plaintiff, now retired, "was a Chief Petty Officer and Navy SEAL in the United States Navy." Am. Compl. ¶ 13. "[Plaintiff] was arrested on September 11, 2018 on charges related to his 2017 deployment to Iraq with SEAL Team 7, Alpha Platoon ("ST7-A")." *Id.* ¶ 19. Plaintiff pleaded not guilty but was placed in pretrial confinement. *See id.* Plaintiff pleads on information and belief that, "because [he] did not quickly plead guilty, members of the [Region Legal Services Office ("]RLSO["]], [Naval Criminal Investigative Service ("]NCIS["]] and/or [Naval Special Warfare Command ("]WARCOM["]] began illegally leaking documents to various news reporters, expecting that negative publicity would help to pressure [him] into taking a plea, as well as to influence any potential jury pool." *Id.* ¶ 23.

"On March 30, 2019, at the urging of several members of Congress, President Trump, in his capacity as Commander-in-Chief, issued an order that [Plaintiff] should be released from the brig and moved to less restrictive conditions." *Id.* ¶ 26. Plaintiff alleges on information and belief that "Navy officials chose Defendant . . . to be their chief mouthpiece after [Plaintiff]'s release." *Id.* ¶ 27. Defendant has been writing news articles about soldiers returning from Iraq and Afghanistan since at least 2010. *See id.* ¶¶ 30–31. Defendant writes for the New York Times, although he is presently on a leave of absence to write a book about Plaintiff. *See id.* ¶¶ 12, 32. Defendant received approximately 500 pages of confidential, leaked documents from the Navy's investigation. *See id.* ¶ 24.

Defendant began publishing articles containing "false and misleading information" about Plaintiff starting on April 23, 2019. *Id.* ¶ 36. Plaintiff acknowledges that this first article, and others, fall outside the statute of limitations for his various defamation claims. *See id.* ¶ 36 n.5. The first article Plaintiff claims contains actionable false statements is a June 3, 2019 article titled "Judge Removes Prosecutor in Navy SEAL's War Crimes Court-

2

Martial." *See id.* ¶¶ 50, 94, 105.  Plaintiff alleges the following statements were false or misleading: "Hoping to track down the source of the leaks, Commander Czaplak, working with Naval Criminal Investigative Service agents, sent emails to defense lawyers in May that had hidden monitoring software embedded in them, allowing prosecutors to track who forwarded and who received the emails, court documents show"; and "Leaked investigative documents in the Gallagher case include detailed descriptions from SEALs in the chief's platoon of their leader indiscriminately spraying civilian neighborhoods in Iraq with rockets and heavy machine gun fire." *Id.*

"Defendant . . . attended court every day of the trial and personally observed the entire proceedings." *Id.* ¶ 51.  Unlike other news outlets, Defendant did not file daily articles about the proceedings. *See id.* ¶ 53.  Instead, Defendant filed only three articles during the pendency of the trial. *See id.* ¶ 69.  On the first day of the trial, he published an article titled "Navy SEAL Edward Gallagher Goes on Trial for War Crimes." *See id.* ¶ 52. Plaintiff alleges the article contained the following false or misleading statements: "They said he . . . ordered SEALs to fire rockets and machine guns at neighborhoods with no clear targets"; "Snipers told investigators that they saw Chief Gallagher shoot a school-age girl in a flower-print hijab who was walking with other girls on a riverbank"; "However, at least one SEAL who initially told investigators he saw the stabbing has apparently recanted"; and "The Gallagher case was rocked in May by revelations that the Navy's lead prosecutor, Cmdr. Christopher Czaplak, and agents of the Naval Criminal Investigative Service had tried to identify the source of leaks by sending emails embedded with hidden tracking software to defense attorneys and a journalist for Navy Times." *Id.*; *see also id.* ¶¶ 94, 105.

On June 20, 2019, Defendant published an article titled "Navy SEAL War Crimes Witness Says He Was the Killer." *Id.* ¶ 56.  That article allegedly contained the following false or misleading statements: "'You can stand up there, and you can lie about how you killed the ISIS prisoner so Chief Gallagher does not have to go to jail,' a Navy prosecutor, Lt. Brian John, told him. Special Operator Scott then looked over from the witness stand

toward Chief Gallagher, whose wife and two of his children were in the courtroom. 'He's got a wife and family,' Special Operator Scott said. 'I don't think he should spend the rest of his life in prison'"; "In the military court in San Diego this week, several SEALs said that since reporting their chief's actions, they had received online death threats, and at least one had begun carrying a concealed weapon"; and "Chief Gallagher then left the battle area to drive to a command post about two miles away." *Id.*; *see also id.* ¶¶ 94, 105.

On June 26, 2019, Defendant published an article titled "Navy SEAL Whose Testimony Roiled War-Crimes Trial May Face Perjury Charge." *Id.* ¶ 57. According to Plaintiff's allegations, that article contained the following false or misleading statements: "Special Operator Scott, who made eye contact with Chief Gallagher and with Timothy Parlatore, the chief's defense lawyer, several times during his testimony, seemed unshaken by the accusation"; "When a prosecutor asked Special Operator Scott in court last week why he had waited until he was on the stand to assert that he had killed the captive, the medic replied that Chief Gallagher had a wife and family, and said, 'I don't think he should spend the rest of his life in prison'"; "Navy investigative documents obtained by The New York Times show that investigators had asked Special Operator Scott a number of times, in the presence of other agents and lawyers, to detail the cause of the captive's death"; "The Navy official said that Naval Criminal Investigative Service agents and Navy prosecutors would be able to testify in a perjury trial that the medic had repeatedly given them a very different account of the captive's death: that he saw Chief Gallagher stab the captive two or three times, not once; that he saw blood rushing from the stab wounds; that the wounds were fatal; and that Special Operator Scott had watched the captive stop breathing and die from those wounds"; "In court, some of the SEALs said they had received threats and had begun carrying 6 weapons for self-defense"; and "[Dalton Tolbert] told the court that he believes that he will probably be cut from SEAL Team 6 because of his part in the trial and the public attention it has drawn." *Id.*; *see also id.* ¶¶ 94, 105.

A verdict was reached on July 2, 2019. *See id.* ¶ 59. Plaintiff was convicted on a single count, *see id.* ¶ 75 n.11, and otherwise acquitted, *see id.* ¶ 58. That same day,

Defendant published an article titled "Navy SEAL Chief Accused of War Crimes is Found Not Guilty of Murder." *Id.* ¶ 59. Plaintiff alleges the article contained the following false or misleading statements: "Some of the platoon members who spoke out were called traitors in a closed Facebook group and were threatened with violence. In court, some said they had started carrying weapons for self-defense"; "The SEAL command initially downplayed the platoon members' reports about the chief, and did not start an investigation of the alleged crimes for more than a year, allowing the trail of evidence to grow cold"; "And a key witness changed his story on the stand to favor Chief Gallagher . . . . His testimony also deviated in other significant ways from what he had told investigators before trial"; and "SEALs testified that after giving the fighter first aid, Chief Gallagher, a trained medic, stabbed the fighter repeatedly in the neck . . . . During two weeks of testimony, two SEALs testified that they had seen Chief Gallagher stab the captive in the neck for no clear reason." *Id.*; *see also id.* ¶¶ 94, 105.

On July 3, 2019, Defendant published an article titled "Acquittal of Navy SEAL May Deter Others From Reporting Crimes, Some Officials Worry." *Id.* ¶ 60. Plaintiff does not identify any particular false or misleading statements but alleges that the article generally "laments [Plaintiff]'s acquittal and quotes numerous alleged anonymous sources opining as to the potential effect of this verdict." *Id.*; *see also id.* ¶ 105.

On July 8, 2019, Defendant appeared on a podcast, "The Daily," "to give a synopsis of the trial." *Id.* ¶ 61. During the podcast, Plaintiff alleges that Defendant made the following false statements: "SEALs are engaged in that battle. But people testify that when he hears it's actually an ISIS captive, he says, no one touch him. He's mine. And he then drives two or three miles back, away from the fight, to their outpost to see this fighter. Everybody agrees about that"; "But then two SEALs testify that Chief Gallagher, for no clear reason, for reasons that even when pressed on the stand, they couldn't offer any insight into, Chief Gallagher pulls out this custom knife and stabs the fighter repeatedly in the neck"; "But when [SO1 Scott] gets to the part where the chief suddenly stabs the fighter in the neck, he starts to hem and haw. Where he had told investigators he stabbed him two

or three times, he says, well, I only saw him stab him once.  And I'm not sure how deep it went.  I didn't even see any blood.  I don't think those wounds would have killed him.  He just seemed stable after that.  And then I waited around until he asphyxiated.  And the prosecution starts getting flustered.  And the prosecutor sat down from his examination, clearly perplexed about what was happening"; and "The first thing that comes in my head is this is not supposed to happen.  This is what happens in every TV court show you've ever seen.  But it never actually happens in court.  This is the type of perjury, take the fall at any cost type of behavior you see in a gang trial, not in the trial of elite commandos.  And so everybody in the courtroom was shocked." *Id.*; *see also id.* ¶¶ 101, 105.

On October 18, 2019, Defendant published an article titled "The Navy Wants to Push Out Problem SEALS.  But Trump May Get in the Way." *Id.* ¶ 62.  Plaintiff alleges the article contains the following false or misleading statements: "Special Operator Scott changed his story on the stand and prosecutors canceled the testimony of other witnesses, fearing they would do the same"; and "Admiral Bolivar replied in a letter Aug. 1 that she found the chief's conduct reprehensible and had no intention of suspending his sentence." *Id.*; *see also id.* ¶¶ 114, 125.

On October 19, 2019, Defendant published an article titled "I Was Reporting on an Outspoken Navy SEAL.  His Colleagues Were Anything But." *Id.* ¶ 63.  Plaintiff fails to allege any particular false or misleading statements contained within the article, instead alleging that the article was "just a cover for the fact that [Defendant] intentionally did not verify his reporting through speaking with additional witnesses." *Id.*

On October 29, 2019, Defendant published an article titled "Navy Reduces Punishment for SEAL in War Crimes Case." *Id.* ¶ 65.  Plaintiff alleges the article contains the following false or misleading statements: "Admiral Bolivar said that she found Special Operator Gallagher's behavior after his trial reprehensible"; "a star witness changed his story"; and "When a wounded Islamic State fighter was brought in, three SEALs told investigators, they saw their chief stab the fighter in the neck, killing him." *Id.*; *see also id.* ¶¶ 114, 125.

"On Friday, November 15, 2019, President Trump issued an order to restore [Plaintiff]'s rank, allowing him to retire with the full pension he had earned." *Id.* ¶ 66. However, Rear Admiral Collin Green "wanted to punish [Plaintiff] further with a symbolic removal of [Plaintiff's] SEAL Trident pin." *Id.* ¶ 67.  Plaintiff alleges on information and belief that "RADM Green and the WARCOMs Public Affairs Officer, CAPT Tamara Lawrence, huddled with Defendant . . . to ensure that [Defendant] was provided with full access to [Plaintiff]'s private information so that [Defendant] could provide extensive and falsified reporting to further Green's corrupt efforts to further hurt [Plaintiff]." *Id.* ¶ 68. Defendant published nine articles over the following roughly two weeks.  *See id.* ¶ 69.

On November 19, 2019, Defendant published an article titled "Navy Wants to Eject From SEALs a Sailor Cleared by Trump, Officials Say." *Id.* ¶ 72.  Plaintiff alleges the article contained the following false or misleading statements: the title itself; "The move could put the SEAL commander, Rear Admiral Collin Green, in direct conflict with President Trump, who last week cleared the sailor, Chief Petty Officer Gallagher, of any judicial punishment in the war crimes case"; and "In court testimony, multiple SEALs in the platoon said that they reported one killing the day it happened, and several times after that as well, but that the platoon commander, Lieutenant Portier, did not forward the report up the chain of command as required by regulations.  Lieutenant Portier was criminally charged with failing to report the murder; he denied the charges, and they were dropped after Chief Gallagher was acquitted.  Commander Breisch was the troop commander over Chief Gallagher and Lieutenant Portier in Iraq.  SEALs in the platoon testified that they told him repeatedly about the killings after the deployment, but were told to 'decompress' and 'let it go,' according to a Navy investigation.  Commander Breisch was not charged." *Id.*; *see also id.* ¶¶ 114, 125.

On November 20, 2019, Defendant published an article titled "As Admiral Moved to Expel a Navy SEAL, He Kept an Eye on Trump." *Id.* ¶ 73.  Plaintiff alleges the article contained the following false or misleading statement: "Mr. Trump intervened in the case several times in the Chief's favor." *Id.*; *see also id.* ¶ 125.  On November 21, 2019,

Defendant published an article titled "Trump Reverses Navy Decision to Oust Edward Gallagher from SEALS." *See id.* ¶ 74. The article repeated the allegedly false statement that "Mr. Trump intervened several times in [Plaintiff's] favor." *Id.*; *see also id.* ¶¶ 114, 125. On November 23, 2019, Defendant published an article titled "Navy is Said to Proceed with Disciplinary Plans Against Edward Gallagher." *Id.* ¶ 75. The article "repeats the debunked allegations against [Plaintiff] and refers to President Trump as having 'cleared' him." *Id.*; *see also id.* ¶¶ 114, 125.

On November 24, 2019, Defendant published an article titled "Esper Demands Resignation of Navy Secretary Over SEAL Case." *Id.* ¶ 76. The article "again repeats the same debunked allegations against Chief Gallagher" and contains the following allegedly false or misleading statement: "[s]everal fellow SEALs reported that [Plaintiff] had shot civilians and killed a captive Islamic State fighter with a custom hunting knife." *Id.*; *see also id.* ¶¶ 114, 125. The same day, Defendant published an article titled "Who is Edward Gallagher, the SEAL the Navy Wants to Expel." *Id.* ¶ 77. The article falsely claims the jury acquitted Plaintiff "after deliberating for about two hours," rather than two days. *Id.*; *see also id.* ¶¶ 114, 125.

On November 25, 2019, Defendant published an article titled "How SEALs and Veterans View the Trump-Navy Tussle Over Gallagher." *Id.* ¶ 78. Plaintiff concedes this article contains no defamatory statements. *See id.* On November 27, 2019, Defendant published an article titled "Navy Drops Efforts to Expel from SEALs 3 Officers Linked to Gallagher." *Id.* ¶ 79. Plaintiff alleges that the article falsely or misleadingly claims "that LCDR Breisch told SEALs to 'decompress' in reference to the murder allegations against [Plaintiff]" and "lament[s] the fact that the Navy is being prevented from unlawfully retaliating against [Plaintiff] or his immediate superiors who were also the subject of discredited allegations." *Id.*; *see also id.* ¶¶ 114, 125.

On November 30, 2019, Defendant published an article titled "Trump's Intervention in SEALs Case Tests Pentagon's Tolerance." *Id.* ¶ 80. "This article contained so many misstatements of fact, material omissions, and opinions masquerading as facts that

[Plaintiff], through counsel, immediately sent Defendant . . . a request for him to correct these inaccuracies with a red-lined version of the article." *Id.*; *see also id.* Ex. A (ECF No. 1-3).[1]  Plaintiff fails to identify within the Amended Complaint, however, which particular statements are allegedly false or misleading.

Plaintiff retired from the Navy on December 4, 2019.  *Id.* ¶ 81.  On December 27, 2019, Defendant published an article titled "Anguish and Anger From the Navy SEALS Who Turned in Edward Gallagher."  *Id.* ¶ 82.  Plaintiff alleges the article contains the following false or misleading statements: "They offer the first opportunity outside the courtroom to hear directly from the men of Alpha platoon, SEAL Team 7, whose blistering testimony about their platoon chief was dismissed by President Trump when he upended the military code of justice to protect Chief Gallagher from the punishment"; "The video interviews and private group text conversations obtained by The Times do not reveal any coordinated deception among the SEALs in the chief's platoon.  Instead, they show men who were hesitant to come forward, but who urged one another to resist outside pressure and threats of violence, and to be honest"; and "The platoon members told investigators that they tried repeatedly to report what they saw, but that the chain of command above them was friendly toward Chief Gallagher and took no action. Finally, in April 2018, they went outside the SEALs to the Naval Criminal Investigative Service.  Chief Gallagher was arrested a few months later."  *Id.*; *see also id.* ¶¶ 114, 125.

The December 27, 2019 article was a "companion piece" to a documentary Defendant "teamed up with producers at FX network to produce."  *Id.* ¶¶ 10, 82.  Plaintiff alleges that the FX documentary was "riddled with inaccuracies, material omissions, and [Defendant's] personal bias and interpretations," but the "most outrageous false statements" were as follows: "And then, Eddie Gallagher's trial starts.  The prosecution starts with their witnesses.  Did you see him stab him?  Yes, I did.  Another SEAL comes

---

[1] Although Plaintiff failed to attach exhibits to his Amended Complaint, the exhibits were included with his original complaint, and the Court will rely on those exhibits in deciding this motion.

up.  Did you see him stab him?  Yes, I did.  The prosecutors present the evidence.  They had a good case"; "Corey Scott changed his story on the stand.  What Corey Scott had told investigators multiple times beforehand is [he stabbed him probably two or three times] . . . The prosecutor sits down without having gotten any of the testimony he expected"; misleading editing of the audio recording of SO1 Scott's trial testimony to juxtapose a question from the prosecutor about whether he could lie with a response to a different question posed by defense counsel; and "This is not the story of one Chief who killed someone, it's the story of six or seven guys who said like no, we're gonna stand up and do the right thing."  *Id.* ¶ 84; *see also id.* ¶ 112.

"On December 20, 2019, Defendant . . . engaged in a lengthy email exchange with [Plaintiff]'s counsel, which resulted in [Plaintiff] providing a quote for [Defendant's] next piece."  *Id.* ¶ 85.  Plaintiff's counsel "warned [Defendant] – and other employees of the New York Times – that continued false reporting regarding [Plaintiff] would lead to the filing of a defamation suit."  *Id.*  On December 31, 2019, Defendant published an article titled "From the Brig to Mar-a-Lago, Former Navy SEAL Capitalizes on Newfound Fame." *Id.* ¶ 86.  Again, the article was "so hopelessly riddled with falsities that [Plaintiff] again, through counsel, sent [Defendant] a red-line edited version by email with a request for corrections."  *Id.*; *see also id.* Ex. C (ECF No. 1-4).[2]  "For the first time, [Defendant's] editors reluctantly made some changes."  *Id.* ¶ 86.  Again, Plaintiff fails to identify within the Amended Complaint which particular statements in this article are allegedly false or misleading.

Plaintiff initiated this action on May 29, 2020, when he filed his original complaint. ECF No. 1.  On August 3, 2020, Defendant Kenneth John Braithwaite, II ("Federal Defendant") moved to dismiss for failure to state a claim, ECF No. 16, and Defendant filed his original special motion to strike, ECF No. 17.  On August 24, 2020, Plaintiff amended

---

[2] It appears that the Amended Complaint's Exhibit C, which was omitted, was attached as Exhibit B to the original complaint.

his complaint as a matter of course.  ECF No. 20.  The next day, the Court denied the pending motion to dismiss and special motion to strike as moot.  ECF No. 21.

Subsequently, the Court granted a joint motion to extend the time for Defendant to respond to the Amended Complaint.  ECF Nos. 22–23.  On September 8, 2020, Federal Defendant answered the Amended Complaint.  ECF No. 24.  Defendant filed the instant Motion on September 23, 2020.  ECF No. 26.

## REQUEST FOR JUDICIAL NOTICE

### I.  Legal Standard

"Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018) (citing *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001)).  "There are two exceptions to this rule: the incorporation-by-reference doctrine, and judicial notice under Federal Rule of Evidence 201."  *Id.*

Pursuant to Federal Rule of Evidence 201(b), "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  "Accordingly, '[a] court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment.'"  *Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689).  "But a court cannot take judicial notice of disputed facts contained in such public records."  *Id.* (citing *Lee*, 250 F.3d at 689).

"Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002); *Venture*

*Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). "'[T]he mere mention of the existence of a document is insufficient to incorporate the contents of a document' under *Ritchie*." *Khoja*, 899 F.3d at 1002 (quoting *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010)). Nonetheless, a document may still form the basis of the plaintiff's claim where "the claim necessarily depended on the[ document]." *Id.* (citing *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005)). "However, if the document merely creates a defense to the well-pled allegations in the complaint, then that document did not necessarily form the basis of the complaint." *Id.*

When a document is incorporated by reference, "the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908; *see also Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) ("The court may treat . . . a document [incorporated by reference] as 'part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'") (citing *Ritchie*, 342 F.3d at 908). Nonetheless, "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint." *Khoja*, 899 F.3d at 1003.

## II. Analysis

Defendant requests that the Court take judicial notice of: (1) 31 articles written by Defendant that "appear[] to form the basis of [Plaintiff]'s claims against [Defendant]"; (2) "Plaintiff's government charge sheet"; and (3) "15 articles evidencing other articles written about Plaintiff's charges and court martial." RJN at 1. Plaintiff's Opposition does not address Defendant's RJN.

As to the 31 articles written by Defendant that refer to Plaintiff's criminal charges and court martial, the Court finds that Plaintiff relies on these articles to form the basis of his claims against Defendant, and therefore the Court concludes that it is appropriate to incorporate by reference those 31 articles.

///

As to the charge sheet, "[a] court may take judicial notice of public records of governmental entities and authoritative sources of foreign law, including information posted on government websites, and may also take notice of undisputed information on a private entity's website."  *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *2 (N.D. Cal. Nov. 15, 2013) (citing *Stevens v. Nkwo–Okere*, Case No. 13–1974 HRL, 2013 U.S. Dist. LEXIS 122172, at *5 n.3 (N.D. Cal. Aug. 27, 2013)); *Sears v. Cnty. of Monterey*, Case No. 11–1876 LHK, 2013 U.S. Dist. LEXIS 120401, at *12 (N.D. Cal. Aug. 22, 2013).  The Court notes that the charge sheet is not from a government website, but that Plaintiff also does not dispute this government record that was published on a private entity's website.  Accordingly, the Court finds it appropriate to judicially notice the document.  *See, e.g.*, *Quintana v. Gates*, No. CV0007166GAF (AJWXAA), 2004 WL 1661540, at *2 n.1 (C.D. Cal. July 20, 2004) (taking judicial notice of, among other things, a charge sheet related to parole revocation where request for judicial notice was not contested).  However, the Court, of course, only takes judicial notice of the fact that these charges were made, and not the truth of the allegations contained therein.

As to the request to judicially notice 15 articles, "[c]ourts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'"  *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (judicially noticing "the fact that various newspapers, magazines, and books have published information about the [art that was the subject of the suit]" (citing *Premier Growth Fund v. All. Cap. Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006); *Heliotrope Gen. Inc. v. Ford Motor Co.*, 189 F.3d 971, 981 n.118 (9th Cir. 1999))).  Defendant offers these articles "for the purpose of showing how his reporting on Plaintiff's court martial was consistent with the many other reporters attending and reporting on the proceedings."  RJN at 4.  Given the narrow scope of Defendant's request and Plaintiff's apparent non-opposition, the Court finds judicial notice of these articles appropriate.

Accordingly, the Court **GRANTS** Defendant's Request for Judicial Notice.  The Court does not take judicial notice of the truth of the content of these articles.

Also before the Court is Defendant's Notice of Availability of Court Martial Transcript.  ECF No. 55.  Defendant submitted, but did not request that the Court judicially notice, a redacted transcript of Plaintiff's court martial obtained from a Freedom of Information Act ("FOIA") request.  *See generally id.*  The Court declines to sua sponte take judicial notice of these voluminous documents because first Defendant "must . . . consider—and identify—which fact or facts [he] is noticing from [a document]."  *Khoja*, 899 F.3d at 999.  Defendant has failed to "identify[] the specific contents [of the transcript] pertinent to [his] arguments."  *Threshold Enters. Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020).  The Court will not search through thousands of pages of records and make assumptions as to which facts Defendant believes supports his position in this matter.  To do so would be contrary to Ninth Circuit law.  *See Metro. Creditors' Tr. v. Pricewaterhousecoopers, LLP*, 463 F. Supp. 2d 1193, 1197 (E.D. Wash. 2006) (declining to take judicial notice of voluminous documents in their entirety based on "the Ninth Circuit's cautious approach to judicial notice" and "unforeseen consequences later in the litigation" but taking judicial notice of undisputed facts in documents related to present motion).  Accordingly, the Court will not rely on the redacted transcript of Plaintiff's court martial in deciding the present Motion.

## SPECIAL MOTION TO STRIKE/RULE 12(b)(6) MOTION TO DISMISS

### I.  Legal Standard

Pursuant to California's Anti-Strategic Lawsuit Against Public Participation ("anti-SLAPP") statute, "a party may file a motion to strike a cause of action against it if the complaint 'aris[es] from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue.'"  *Mindys Cosmetics, Inc. v. Dakar*, 611 F.3d 590, 595 (9th Cir. 2010) (citing Cal. Civ. Proc. Code § 425.16(b)(1)).  "The statute is to be 'construed broadly,'" *id.* (citing Cal. Civ. Proc. Code § 425.16(a); *Vess v. Ciba-Geigy Corp. USA*, 317

F.3d 1097, 1109 (9th Cir. 2003)), and has been construed to permit a party to challenge an entire cause of action or any part thereof, *see Baral v. Schnitt*, 1 Cal. 5th 376, 393–94 (2016) (citations omitted).

"A court considering a motion to strike under the anti-SLAPP statute must engage in a two-part inquiry.  First, a defendant 'must make an initial prima facie showing that the plaintiff's suit arises from an act in furtherance of the defendant's rights of petition or free speech.'"  *Vess*, 317 F.3d at 1110 (citing *Globetrotter Software, Inc. v. Elan Comput. Grp., Inc.*, 63 F. Supp. 2d 1127, 1129 (N.D. Cal. 1999); *Wilcox v. Superior Court*, 27 Cal. App. 4th 809, 819–20, 33 (1994)).  "The defendant need not show that the plaintiff's suit was brought with the intention to chill the defendant's speech; the plaintiff's 'intentions are ultimately beside the point.'"  *Id.* (citing *Equilon Enters., LLC v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (Cal. 2002)); *see also Dible v. Haight Ashbury Free Clinics, Inc.*, 170 Cal. App. 4th 843, 851 (2009) ("If the actionable communication fits within the definition contained in the statute, the motive of the communicator does not matter." (citation omitted)).  "Similarly, the defendant bringing a motion to strike need not show that any speech was actually chilled."  *Vess*, 317 F.3d at 1110 (citing *City of Cotati v. Cashman*, 29 Cal. 4th 69, 75–76 (Cal. 2002)).

In federal court, the standard the court applies in the second step depends on whether the anti-SLAPP motion is founded on purely legal arguments or raises factual challenges to the complaint.  *Planned Parenthood Fed'n of Am., Inc. v. Ctr. for Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018), *concurrence amended*, 897 F.3d 1224 (9th Cir. 2018).  Where, as here,[3] "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rule of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated."  *Id.*

///

---

[3] Defendant repeatedly asserts that he only "challenges the legal sufficiency of Plaintiff's claims."  Mot. at 2; *see also id.* at 15–16, 18; Reply at 6.  Plaintiff does not appear to contest this characterization in his Opposition.

Federal Rule of Civil Procedure 12(b)(6) permits a party to raise by motion the defense that the complaint "fail[s] to state a claim upon which relief can be granted," generally referred to as a motion to dismiss.  The Court evaluates whether a complaint states a cognizable legal theory and sufficient facts in light of Federal Rule of Civil Procedure 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."   Although Rule 8 "does not require 'detailed factual allegations,' . . . it [does] demand more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).   A complaint will not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 557).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570); *see also* Fed. R. Civ. P. 12(b)(6).  A claim is facially plausible when the facts pled "allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 677 (citing *Twombly*, 550 U.S. at 556).  That is not to say that the claim must be probable, but there must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.*  Facts "'merely consistent with' a defendant's liability" fall short of a plausible entitlement to relief. *Id.* (quoting *Twombly*, 550 U.S. at 557).  This review requires context-specific analysis involving the Court's "judicial experience and common sense." *Id.* at 675 (citation omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.*

///

Where a complaint does not survive 12(b)(6) analysis, the Court will grant leave to amend unless it determines that no modified contention "consistent with the challenged pleading . . . [will] cure the deficiency." *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## II.  The Parties' Briefing

Defendant seeks to either strike under California's anti-SLAPP statute or dismiss under Federal Rule of Civil Procedure 12(b)(6) all the claims Plaintiff asserts against him. *See* Mot. at 33.  Defendant argues that Plaintiff should not be able to assert any claims under Florida law, but regardless, California's anti-SLAPP statute applies to all Plaintiff's claims against him, whether or not Florida substantive law applies. *Id.* at 14.  Further, Defendant claims "[i]t is indisputable that Plaintiff's claims against [him] comfortably fall within the protection of the anti-SLAPP statute, because they are based entirely on Mr. Philipps's reporting and published articles regarding the investigations into Plaintiff's conduct and subsequent court martial, as well as President Trump's repeated interventions on behalf of Plaintiff both before and after the court martial." *Id.* at 17 (citation omitted). Alternatively, Defendant argues the statements at issue fall within the catch-all protection for "*any* other conduct in furtherance of the exercise of . . . the constitutional right of free speech in connection with a public issue or an issue of public interest," *id.* (quoting Cal. Civ. Proc. Code § 425.16(e)(4)), or the protection for "statements 'made in a . . . public forum in connection with an issue of public interest,'" *id.* at 18 (quoting Cal. Civ. Proc. Code § 425.16(e)(4); *Hupp v. Freedom Commc'ns*, 221 Cal. App. 4th 398, 405 (2013)).

Defendant further argues Plaintiff is unable to "show that his claims are facially plausible." *Id.* (citations omitted).  First, Defendant claims that Plaintiff at times fails to identify adequately specific defamatory statements. *Id.* at 18–20.  Second, Defendant argues that Plaintiff failed to demand retractions in conformance with California and/or Florida law. *Id.* at 20–23.  Third, Defendant claims that his statements fall within the absolute privilege for fair and true reports of government proceedings and official records,

available both in California and Florida.  *Id.* at 23–26.  Fourth, Defendant asserts that Plaintiff cannot meet his burden to establish that each of the statements in question is false, much less materially false, and thus the "substantial truth" doctrine bars Plaintiff's claims. *Id.* at 27–29.  Fifth, Defendant claims that some of the statements at issue are opinion, and therefore not actionable as a matter of law.  *Id.* at 29–31.  Sixth, Defendant claims some of the statements at issue are not "of and concerning" Plaintiff, and therefore not actionable by Plaintiff.  *Id.* at 31–32.  Finally, Defendant argues that the intentional infliction of emotional distress claim is based on the same facts, and therefore superfluous; furthermore, the claim must fail for the additional reasons that the alleged conduct was not sufficiently egregious and "[Plaintiff] fails to allege that the purported conduct caused him to suffer 'severe emotional distress.'"  *Id.* at 32–33.  Should he prevail, Defendant requests "attorneys' fees by a separately briefed motion."  Reply at 14.

Plaintiff opposes and opens by making a number of arguments about what law should apply broadly to Defendant's motion.  First, Plaintiff argues that to apply the anti-SLAPP statute here "would be to take the legislative intent and turn it on its head."  Opp'n at 9–11.  Second, Plaintiff argues that Defendant's motion "should be treated as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), regardless of how it is titled," and, to the extent the Complaint is deficient, leave to amend should be granted.  *Id.* at 11– 13.  Third, Plaintiff claims that "California's anti-SLAPP statute does not apply at all to the Florida causes of action," and courts within the Eleventh Circuit "have for the most part evaded the issue of whether the Florida [anti-SLAPP] statute is substantive or procedural," instead evaluating such motions as motions to dismiss.  *Id.* at 13–15.

Plaintiff further argues that he has sufficiently pleaded his claims against Defendant. *Id.* at 15.  He claims to have adequately identified the statements at issue; to have "demanded a correction and to the extent he did not, the defamation is clear on its face (defamation per se) or [Plaintiff] has pled specific damages"; to have alleged that the statements at issue are either false or true with defamatory implication; that the statements in question are not opinion; and that the statements at issue are "of and concerning"

Plaintiff. *Id.* at 16–17.  Plaintiff argues that the statements are "of and concerning" him, as "[t]he issue is whether the statements are susceptible to negative innuendo about the plaintiff"; here, "[t]he cumulative effect" of the statements "is a clearly defamatory picture." *Id.* at 30 (citing *Kapellas v. Koffman*, 1 Cal. 3d 20 (1969)).  Nor is Defendant, whose reporting was "neither fair[] nor truthful," entitled to the privilege for "a fair and true report of government proceedings." *Id.*  Moreover, because "the articles at issue are presented as factual accounts of what happened at [Plaintiff's] trial from a legitimate and well-established national news media source," "[t]he reasonable expectation of the audience was that they were reading an accurate description of what happened in the courtroom and of what was contained in the investigative record," and thus, the statements at issue are not nonactionable opinion. *Id.* at 31–34.  Plaintiff also argues that his emotional distress claim is not duplicative or superfluous because the claim does not simply allege that the at-issue statements caused Plaintiff severe emotional distress, but rather that additional conduct of Defendant's was outrageous and beyond the bounds of decency. *Id.* at 40 (citing FAC ¶¶ 135–37).

To the extent the Court grants any portion of Defendant's Motion, Plaintiff requests leave to amend in accordance with Federal Rule of Civil Procedure 15(a), *id.* at 40–41, and attorneys' fees and costs incurred in opposing Defendant's "strategic and frivolous anti-SLAPP motion." *Id.* at 42.

## III. Analysis

### A. *Plaintiff's Claims Under Florida Law*

Plaintiff asserts three claims against Defendant under California law, three claims under Florida law, and an intentional infliction of emotional distress claim of unidentified province.[4] FAC ¶¶ 87–137.  As an initial matter, Defendant argues that Plaintiff's claims should all be decided under California law as the law of the forum state, and that the burden

---

[4] Plaintiff appears to concede, however, that California law applies to the intentional infliction of emotional distress claim.  *See* Opp'n at 39–40.

is on Plaintiff to show that Florida law should govern any of his claims.  Mot. at 14 (citing *CRS Recovery v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010)).   In response, Plaintiff argues that Florida law should apply to any defamatory statements published after he moved to Florida, apparently arguing that Florida's interest in seeing its laws applied outweighs California's interest.  Opp'n at 14.

"In a federal question action where the federal court is exercising supplemental jurisdiction over state claims, the federal court applies the choice-of-law rules of the forum state—in this case, California." *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996) (citations omitted).  "California's choice of law rules state that 'California will apply its own rule of decision unless a party invokes a law of a foreign state that "will further the interest of the foreign state."'"  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 10-05625 SI, 2013 WL 6327490, at *2 (N.D. Cal. Dec. 3, 2013) (quoting *Paulsen v. CNF Inc.*, 559 F.3d 1061, 1080 (9th Cir. 2009)).  "Under the first step, the party invoking foreign law must demonstrate that the foreign law is materially different from California law." *Id.*

The Court notes that this issue was not thoroughly briefed by the Parties.  That is understandable, given the breadth and complexity of the substantive issues raised in the Motion.  Nonetheless, Plaintiff, as the party invoking foreign law, fails to demonstrate that the defamation laws of Florida are materially different from those of California.  Because Plaintiff has not carried his burden of identifying an actual conflict between the laws of California and Florida, this Court can, and indeed does, find California law applicable.  *See Urica, Inc. v. Pharmaplast, S.A.E.*, No. CV1102476MMMRZX, 2013 WL 12123305, at *11 (C.D. Cal. Jan. 10, 2013) ("[T]he parties acknowledge that the elements of a claim for fraud are the same under Illinois and California law.   Medline, therefore, cannot demonstrate that the laws of the jurisdictions differ.  Because Medline, as 'the foreign law proponent, has fail[ed] to identify any actual conflict or . . . establish the other state's interest in having its own law applied,' the court can 'properly find California law

///

applicable' without examining the remaining steps of the governmental interest test." (citation omitted)).

Moreover, it appears the elements of the California and Florida claims are essentially the same. *Compare Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 856 (N.D. Cal. 2020) ("California law provides that a plaintiff bringing a defamation claim must show four elements: 'that defendants published the statements; that the statements were about plaintiff; that they were false; and that defendants failed to use reasonable care to determine the truth or falsity.' If the plaintiff is a public figure, then he must prove that the defendant acted with 'actual malice.'" (first quoting *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal. App. 4th 450, 470 (2012); then quoting *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 258 (9th Cir. 2013))), *with Bongino v. Daily Beast Co., LLC*, 477 F. Supp. 3d 1310, 1317–18 (S.D. Fla. 2020) ("Under Florida law, defamation is generally defined as the unprivileged publication of false statements which naturally and proximately result in injury to another. To state a claim for defamation, a plaintiff must plausibly allege the following five elements: (1) publication; (2) falsity; (3) the defendant acted with knowledge or reckless disregard as to the falsity on a matter concerning a public official, or at least negligently on a matter concerning a private person; (4) actual damages; and (5) the statement must be defamatory. If the plaintiff bringing a defamation claim is a public figure, he or she must also demonstrate actual malice on behalf of the publisher by clear and convincing evidence." (citations and internal quotation marks omitted)). Based on the procedural history of this matter—Plaintiff filed the FAC after Defendant filed a prior anti-SLAPP motion, *see* ECF Nos. 17, 20—the Court suspects that Plaintiff invoked Florida law in his FAC to avoid application of California's anti-SLAPP statute.

Accordingly, in light of the foregoing, the Court will apply California law to all Plaintiff's claims.

### B.   Applicability of California's Anti-SLAPP Statute

As an additional threshold matter, the Court addresses Plaintiff's argument that California's anti-SLAPP statute should not apply in federal court, *see* Opp'n at 11–13, or

to his Florida law claims,[5] *see id.* at 13–15.  Defendant counters that where, as here, "Plaintiff filed his claims about his California-based court martial with this California Court, . . . California's anti-SLAPP statute applie[s] to all of his claims."  Reply at 7.

The Court agrees with Defendant that it is absolutely clear in the Ninth Circuit that a party may bring a motion in federal court under California's anti-SLAPP statute and that the sufficiency of Plaintiff's claims is to be analyzed under the standard of Rule 12(b)(6).  *See* Reply at 5 (citing *Planned Parenthood Fed'n of Am.*, 890 F.3d at 834); *see also Grant & Eisenhofer, P.A. v. Brown*, No. CV175968PSGAFMX, 2018 WL 3816721, at *3 (C.D. Cal. Feb. 16, 2018) (rejecting argument that California's anti-SLAPP rule could not be applied to case transferred from the D.C. Circuit because "the Court must look to the *Ninth* Circuit, not the *D.C.* Circuit, to determine the proper interpretation of the Federal Rules of Civil Procedure" and  the Ninth Circuit has made clear that "the Federal Rules permit the application of anti-SLAPP laws" (citations omitted)).  Accordingly, given that Plaintiff does not argue that Florida's anti-SLAPP law should apply to his California law claims, the Court will apply California's anti-SLAPP statute.

### C.     Step 1: Does the Suit Arise from an Act in Furtherance of Free Speech?

Having disposed of these preliminary issues, the Court now turns to the first part of the anti-SLAPP analysis: whether Plaintiff's "cause of action against [Defendant] aris[es] from any act of [Defendant] in furtherance of [his] right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  Cal. Civ. Proc. Code § 425.16(b)(1).  Plaintiff argues that California's anti-SLAPP statute should not apply to the facts before this Court, *see* Opp'n at 9–11, essentially arguing that to find this matter to be a "SLAPP" would be contrary to the legislative intent in enacting the anti-SLAPP statute, *id.* at 10–11 (citations omitted).  Defendant responds ///

---

[5] Given the Court's decision to apply California law to all Plaintiff's claims, the Court finds this second issue to be moot.

that, despite Plaintiff's protestations, Plaintiff's claims fall squarely within the bounds of the broadly interpreted anti-SLAPP statute.  Reply at 7.

As the Court noted above, *supra* p. 15, a plaintiff's intent or motive in bringing a suit is irrelevant in determining whether the anti-SLAPP statute applies to the plaintiff's claims.  *Vess*, 317 F.3d at 1110 (citations omitted).  Thus, to the extent Plaintiff argues that he is exempt from application of the anti-SLAPP statute because of his innocent intentions in bringing suit and his desire to protect himself from defamation, the Court disagrees.

"In order to prevail on an anti-SLAPP motion, the defendant is required to make a prima facie showing that the plaintiff's suit arises from an act by the defendant made in connection with a public issue in furtherance of the defendant's right to free speech under the United States or California Constitution."  *Mello v. Great Seneca Fin. Corp.*, 526 F. Supp. 2d 1024, 1027–28 (C.D. Cal. 2007) (citation omitted).  Plaintiff wisely does not attempt to argue that his action does not arise from an act of Defendant in furtherance of his right of free speech and apparently concedes this issue.  *See, e.g.*, *Peak Health Ctr. v. Dorfman*, No. 19-CV-04145-VKD, 2020 WL 887935, at *10 (N.D. Cal. Feb. 24, 2020) ("Peak Health does not address this argument in its opposition brief and thus appears to concede the issue.").  Further, it is clear to the Court that the articles and podcasts in question meet the statutory requirement for protected activity as "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest."  Cal. Civ. Proc. Code § 425.16(e); *see also* Mot. at 18. The overwhelming majority of courts have found news articles to be statements in public fora.  *See, e.g.*, *Manzari v. Associated Newspapers Ltd.*, 830 F.3d 881, 887 (9th Cir. 2016) (finding *Daily Mail* article to satisfy § 425.16(e)); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050–51 (E.D. Cal. 2008) ("The City's press release and the 'news articles' constituted statements in public fora."); *Moreau v. Daily Indep.*, No. 1:12-CV-01862-LJO, 2013 WL 85362, at *4 (E.D. Cal. Jan. 8, 2013) ("[T]he Court concludes that both the print and website versions of the September 2011 Article published by [*The Daily Independent*] ///

are statements or writings 'made in a place open to the public or a public forum' within the meaning of the anti-SLAPP statute." (quoting Cal. Civ. Proc. Code § 425.16(e)(3))).

Additionally, courts have found statements made during radio interviews or programs to satisfy the "public forum" requirement. *See Jackson v. Mayweather*, 10 Cal. App. 5th 1240, 1252, *as modified* (Apr. 19, 2017) ("[S]tatements during a radio interview meet subdivision (e)(3)'s public forum requirement." (citing *Seelig v. Infinity Broad. Corp.*, 97 Cal. App. 4th 798, 807 (2002))). Statements made in a podcast are sufficiently similar that the Court finds them to satisfy the public forum requirement as well.

It is also clear that Defendant's speech is "in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). "In this case, the broader topic of treatment of Iraqi captives by members of the United States military on this matter of public interest qualifies as a public issue." *Four Navy Seals v. Associated Press*, 413 F. Supp. 2d 1136, 1149 (S.D. Cal. 2005). Thus, the articles and podcasts in question "were published in furtherance of Defendant[']s[] 'right of free speech in connection with a public issue' and thus trigger the application of [a]nti[-]SLAPP protections." *Id.*; *see also Sarver v. Chartier*, 813 F.3d 891, 902 (9th Cir. 2016) ("We conclude that this focus on the conduct of the Iraq War satisfies California's standards for determining whether an issue is one of public concern. That war, its dangers, and soldiers' experiences were subjects of longstanding public attention.").

The Court thus finds that the statements at issue are "written or oral statement[s] or writing[s] made in a place open to the public or a public forum in connection with an issue of public interest." Cal. Civ. Proc. Code § 425.16(e). Accordingly, Defendant has carried his burden at the first step of the anti-SLAPP analysis.

### D. *Step 2: Sufficiency of Defamation Claims*

The burden thus shifts to Plaintiff to establish a probability of prevailing on his claims. *Mello*, 526 F. Supp. 2d at 1028 (citation omitted). For the reasons provided *supra*, the Court will analyze Plaintiff's claims under California law. Plaintiff asserts three varieties of defamation claim: libel, slander, and defamation by implication.

///

"Under California law, a defamation claim, which may be asserted as a claim for slander (oral) or libel (written), includes the following elements: '(1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage.'" *KM Strategic Mgmt., LLC v. Am. Cas. Co. of Reading PA*, 156 F. Supp. 3d 1154, 1166–67 (C.D. Cal. 2015) (quoting *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1369 (2010)). "It is an essential element of defamation that the publication be of a false statement of fact rather than opinion." *Erhart v. BofI Holding, Inc.*, 269 F. Supp. 3d 1059, 1083 (S.D. Cal. 2017) (quoting *Ringler Assocs., Inc. v. Md. Cas. Co.*, 80 Cal. App. 4th 1165, 1181 (2000)). "The dispositive question for the court is whether a reasonable factfinder could conclude that the published statements imply a provably false factual assertion." *Id.* (quoting *Moyer v. Amador Valley J. Union High Sch. Dist.*, 225 Cal. App. 3d 720, 724, 725 (1990)). "Courts analyze this issue using a 'totality of circumstances' test—a review of the meaning of the language in context and its susceptibility to being proved true or false." *Id.* "[A] defamatory meaning must be found, if at all, in a reading of the publication as a whole. Defamation actions cannot be based on snippets taken out of context." *Issa v. Applegate*, 31 Cal. App. 5th 689, 713–14 (2019) (citation omitted) (quoting *Kaelin v. Globe Commc'ns Corp.*, 162 F.3d 1036, 1040 (9th Cir. 1998). "The statement also must specifically refer to or concern the defamed plaintiff in some way." *KM Strategic Mgmt.*, 156 F. Supp. 3d at 1167 (citing *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1042 (1986)).

As noted above, Defendant raises numerous challenges to the sufficiency of Plaintiff's claims. The Court will address several upfront and then turn to the alleged adequacy of specifically identified and challenged statements.

### 1. Identification of Specific Statements

First, Defendant argues that Plaintiff fails to adequately identify some of the allegedly defamatory statements. Mot. at 18–20. Specifically, Defendant identifies the

///

///

allegations contained in paragraphs 39,[6] 59, 60, 63, 65, 73, 75–80, and 86 of the FAC to be "generalized pleadings without a single specific statement or explanation [that] are insufficient." *Id.* at 19–20. Plaintiff claims that he "clearly identified and specifically stated the defamatory statements at issue" in these paragraphs. Opp'n at 16–17.

"Under California law, the defamatory statement must be specifically identified, and the plaintiff must plead the substance of the statement. Even under the liberal federal pleading standards, general allegations of the defamatory statements that do not identify the substance of what was said are insufficient." *Erhart*, 269 F. Supp. 3d at 1083 (quoting *Norsat Int'l v. B.I.P. Corp.*, No. 12-cv-674-WQH, 2013 WL 5530771, at *5 (S.D. Cal. Oct. 3, 2013)).

The Court agrees that paragraphs 60, 63, 75 (in part), 78, 80, and 86 insufficiently identify the allegedly defamatory statements at issue. As to paragraph 75, the FAC inadequately identifies "the debunked allegations against [Plaintiff]" and the passages in the article that allegedly "advocate for corrupt Navy officials who were intent on moving forward with their plan to impose additional punishment on [Plaintiff], in violation of the orders of the president." FAC ¶ 75. Regarding paragraphs 80 and 86, the Court agrees that the redlines provided in Exhibits A and B are inadequate to identify the allegedly defamatory statements as opposed to statements that Plaintiff and his counsel simply did not care for due to other reasons. Accordingly, the Court **GRANTS** the Motion as to and **STRIKES** these paragraphs, or the deficient portions thereof, from the FAC.

The Court finds that the remaining paragraphs Defendant challenges do adequately identify the allegedly defamatory statements at issue. For example, paragraph 59 identifies four allegedly defamatory statements. FAC ¶¶ 59(a)–(d). Paragraph 65 likewise provides two verbatim examples of allegedly defamatory statements. *Id*. ¶¶ 65, 65(a). Likewise, paragraph 73 identifies the allegedly defamatory statement contained in the article at issue

---

[6] Given that Plaintiff acknowledges that this statement falls outside of the relevant statute of limitations, FAC ¶ 36 n.5, the Court will not address the adequacy of this allegation.

verbatim: "Mr. Trump intervened in the case several times in the chief's favor." *Id.* ¶ 73. To the extent paragraph 75 claims that Defendant states that President Trump "cleared" him, this allegation is identified sufficiently. *Id.* ¶ 75 ("The Pentagon had already been quietly fuming this month after Mr. Trump cleared three members of the armed services . . . ."). Paragraphs 76 and 77, likewise allege specific, verbatim statements. *Id.* ¶¶ 76–77. And paragraph 79 adequately alleges that Commander Breisch exhorted SEALs to "decompress." *Id.* ¶ 79. Accordingly, as to these paragraphs (or the adequate portions thereof), the Court **DENIES** the Motion.

### 2. *Adequacy of Retraction/Correction Demands*

Second, Defendant claims that Plaintiff failed to adequately demand corrections to the allegedly defamatory statements, and therefore only special damages are recoverable. Mot. at 20–21. Defendant further argues that Plaintiff fails to plead adequately special damages, and accordingly, Plaintiff's claims must be dismissed. *Id.* at 21–22.

Plaintiff counters that he "properly pleaded that counsel for [Plaintiff] informed [Defendant] that his articles were missing facts and contained defamatory implications and demanded that Philipps amend and cease the defamatory publications," Opp'n at 35 (citing FAC ¶ 96), and, at any rate, "[he] has sufficiently alleged special damages as required to survive a motion under the standards of Fed. R. Civ. P. 12(b)(6)," *id.* Plaintiff argues that "[a]t issue here is not whether a specific demand, as made, satisfies the statute but whether the allegation that a demand was made is sufficient to overcome a 12(b)(6) motion to dismiss." *Id.* at 36. Plaintiff also claims his damages allegations are sufficient as he pleads damages due to "lost speaking engagements and employment opportunities, time and travel expenses to combat [Defendant]'s false reporting, the cost of therapy for [his] daughter, the time and expense of counseling for the entire family, and the expense of this lawsuit," *id.* at 37 (citing FAC ¶¶ 99, 103, 112, 120, 133), and that those damages were caused by Defendant's statements, *id.* (citations omitted).

///

///

Section 48a(a) of the California Civil Code provides:

> In any action for damages for the publication of a libel in a daily or weekly news publication, or of a slander by radio broadcast, plaintiff shall only recover special damages unless a correction is demanded and is not published or broadcast, as provided in this section.  Plaintiff shall serve upon the publisher at the place of publication, or broadcaster at the place of broadcast, a written notice specifying the statements claimed to be libelous and demanding that those statements be corrected.  The notice and demand must be served within 20 days after knowledge of the publication or broadcast of the statements claimed to be libelous.

"The crucial issue in evaluating the adequacy of the notice turns on whether the publisher should reasonably have comprehended which statements plaintiff protested and wished corrected." *Kapellas*, 1 Cal. 3d at 31 (citing *MacLeod v. Tribune Publ'n Co.*, 52 Cal. 2d 536, 554 (1959)).

Section 48a defines special damages to include "all damages that plaintiff alleges and proves that he or she has suffered in respect to his or her property, business, trade, profession, or occupation, including the amounts of money the plaintiff alleges and proves he or she has expended as a result of the alleged libel, and no other."  Cal. Civ. Code § 48a(d)(2).  "[A] business loss suffered by the plaintiff as a result of damage to her reputation" is "the classical definition of special damage in a defamation case," and "[i]t is clear that under California law, a loss of clients following defamation is evidence of recoverable special damages," as are "the value of lost time at work, medical expenses attributable to the defamation, and other economic losses in one's employment." *O'Hara v. Storer Commc'ns, Inc.*, 231 Cal. App. 3d 1101, 1112, 1114, *reh'g denied and opinion modified* (July 24, 1991) (citations omitted).  In this vein, amounts incurred in medical or psychological treatment as a result of the defamation are also recoverable as special damages. *Id.* (citing *Gomes v. Fried*, 136 Cal. App. 3d 924 (1982)).  However, a general allegation of loss of prospective employment [i]s not sufficient," although "the loss of

///

specific employment with a specific employer [i]s." *Gomes*, 136 Cal. App. 3d at 940 (citations omitted).

Here, Plaintiff alleges that "Defendant Philipps failed to correct any of his publications or cease publishing defamatory content after counsel for [Plaintiff] brought the missing relevant facts and defamatory implications to his attention and informed defendant Philipps that he would be sued for defamation if he did not amend and cease the defamatory publications." FAC ¶ 96. The Court finds this statement insufficient to plead compliance with § 48a(a) of the California Civil Code. Plaintiff does not allege that he served written notice on the publisher specifying the allegedly libelous statements within twenty days of obtaining knowledge of the publication of each challenged article. *See, e.g.*, *Anderson v. Hearst Pub. Co.*, 120 F. Supp. 850, 851–52 (S.D. Cal. 1954) (finding retraction demand inadequate and granting motion to dismiss where demand stated that "certain statements regarding me . . . are untrue, libelous and damaging" and the article in question was "lengthy," "three columns by ten inches," and "[c]ontained . . . eight references to the plaintiff"). The Court "cannot disregard the plain language of . . . [§] 48," which requires a plaintiff to "serve 'a written notice specifying the statements claimed to be libelous.'" *Id.* at 853. Because the FAC contains no allegation that Plaintiff served a correction complying with § 48a upon the publisher, Plaintiff cannot recover general or exemplary damages. Therefore, the Court **GRANTS** Defendant's Motion in this regard.

Nonetheless, Plaintiff alleges that he:

> has suffered actual damages from Defendant's false and defamatory statements in the form of lost speaking engagements and employment opportunities, time and travel expenses to combat the false narrative created by Defendant Philipps, additional time away from work for his wife and travel expenses during the extended time for trial resulting from the "investigation" into the leaked information being disclosed by Defendant, the cost of therapy for [his] daughter, time and expense of counseling for the entire family, and the thousands of dollars expended in furtherance of this lawsuit to remedy and put

an end to the continued damaging, intentionally defamatory and untrue statements of Defendant Philipps.

FAC ¶¶ 112, 120.  Although some of these allegations—for example, alleged damages from unspecified lost speaking engagements and employment opportunities—are too generalized to allege specific damages, at least some of the allegations—for example, counseling expenses incurred as a result of the defamation—are adequate.  Accordingly, the Court **DENIES** the Motion on this ground.

### 3.    *Remaining Privileges and Defenses*

Defendant raises various arguments concerning the remaining challenged statements, which the Court will examine in turn.

### a.    Fair and True Reporting Privilege

First, Defendant argues that all the statements at issue are protected by the reporting privilege contained in § 47(d) of the California Civil Code.  Mot. At 23.  Defendant claims that the challenged statements captured the "substance" or "gist" of the court martial proceedings and therefore fall within the privilege.  *Id.* at 25–26.  He also claims that the articles written after Plaintiff's partial acquittal accurately report that truth.  *Id.* at 26. Defendant argues that Plaintiff's claims that he and/or members of the Navy are biased against him do not render the privilege inapplicable.  *Id.*  In response, Plaintiff argues that the "fair and true" reporting privilege is inapplicable because "[h]ere, many if not all of the complained of statements are probably false by comparison to either the trial transcript or the leaked Privacy Act documents."  Opp'n at 30 n.7.  Defendant responds that "just comparing the Articles to Plaintiff's own allegations makes clear that [his] reporting closely tracked the underlying government source material."  Reply at 10 (citations omitted).

"The fair report privilege confers an absolute privilege on any fair and true report in, or a communication to, a public journal of a judicial proceeding, or anything said in the course thereof."  *Blatt v. Pambakian*, 432 F. Supp. 3d 1141, 1170 (C.D. Cal. 2020) (quoting *Healthsmart Pac., Inc. v. Kabateck*, 7 Cal. App. 5th 416, 431 (2016), *as modified* (Jan. 10,

2017)). "To be 'fair and true,' the report must [capture] the substance, the gist or sting, of the subject proceedings as measured by considering the natural and probable effect [of the report] on the mind of the average reader." *Id.* (alterations in original) (quoting *Argentieri v. Zuckerberg*, 8 Cal. App. 5th 768, 787–88 (2017)).  "The defendant is entitled to a certain degree of flexibility/literary license in this regard, such that the privilege will apply even if there is a slight inaccuracy in details—one that does not lead the reader to be affected differently by the report than he or she would be by the actual truth." *Id.* (quoting *Argentieri*, 8 Cal. App. 5th at 787–88).  "When [the privilege] applies, the reported statements are absolutely privileged regardless of the defendants' motive for reporting them.'" *Id.* (alteration in original) (quoting *Healthsmart*, 7 Cal. App. 5th at 431).

"In general, whether a privileged occasion exists within the meaning of Civil Code section 47, subdivision (d), is for the court to decide; whether the report of the official proceedings itself is fair and true, provided reasonable minds could disagree as to the effect of the communication on the average reader or listener, is a question of fact for the jury." *Id.* at 1170–71 (citing *Healthsmart*, 7 Cal. App. 5th at 431) (internal quotation marks omitted).  "'When, however, there is no dispute as to what occurred in the judicial proceeding reported upon or as to what was contained in the report, the question is one of law.'" *Id.* at 1171 (citing *Healthsmart*, 7 Cal. App. 5th at 431).  The burden falls on Defendant to prove that each statement falls within the scope of the privilege. *See id.* at 1170 (citing *Carver v. Bonds*, 135 Cal. App. 4th 328, 348–49 (2005); *Youngevity Int'l Corp. v. Andreoli*, 749 F. App'x 634 (9th Cir. 2019)).

To evaluate the applicability of the fair and true reporting privilege, the Court looks to the underlying judicial proceeding, Plaintiff's court martial.  The charge sheet, Ex. B, ECF No. 26-3, contains the follow charges:

Charge I: Violation of the UCMJ Article 118

Specification (Premeditated Murder): In that Chief Special Warfare Operator Edward R. Gallagher, U.S. Navy, Naval

Special Warfare Group ONE, on active duty,[7] did, at or near Mosul, Iraq, on or about 3 May 2017, with premeditation, murder a wounded male person under the care of the said SOC Gallagher by means or stabbing him in the neck and body with a knife.

Charge II: Violations of the UCMJ Article 128

Specification 1 (Aggravated Assault with a Dangerous Weapon): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or about 18 June 2017, commit an assault upon a noncombatant male person by shooting him with a dangerous weapon likely to produce death or grievous bodily harm, to wit: a loaded firearm.

Specification 2 (Aggravated Assault with a Dangerous Weapon): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or about July 2017, commit an assault upon a noncombatant female person by shooting her with a dangerous weapon likely to produce death or grievous bodily harm, to wit: a loaded firearm.

Charge III: Violation of the UCMJ Article 134

Specification 1 (Firearm, discharging willfully, under such circumstances as to endanger human life): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or divers occasions during his deployment in 2017, wrongfully and willfully discharge a firearm, to wit: firing at noncombatants, under circumstances such as to endanger human life, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 2 (Obstructing Justice): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on divers occasions during his deployment in 2017, wrongfully endeavor to impede an investigation by attempting to discourage members of his

---

[7] Each specification includes Plaintiff's full title and states that the allegations are for conduct while on active duty; however, in the interest of brevity, the Court has omitted this information from subsequent specifications.

Platoon from reporting his actions while in Iraq during his deployment in 2017, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 3 (Obstructing Justice): In that . . . Edward R. Gallagher, . . . did, at or near San Diego, California, on divers occasions from about August 2017 to about April 2018 wrongfully endeavor to impede an investigation, by attempting to discourage members of his Platoon from reporting his actions while in Iraq during his deployment in 2017, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 4 (Obstructing Justice): In that . . . Edward R. Gallagher, . . . did, at or near San Diego, California, on divers occasions from about April 2018 to about September 2018 wrongfully endeavor to impede an investigation, by attempting to discourage members of his Platoon from reporting his actions while in Iraq during his deployment in 2017, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 5 (Novel): In . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or about 3 May 2017, wrongfully pose for an unofficial picture with a human casualty, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 6 (Novel): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or about 3 May 2017, wrongfully complete his reenlistment ceremony next to a human casualty, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Specification 7 (Novel): In that . . . Edward R. Gallagher, . . . did, at or near Mosul, Iraq, on or about 3 May 2017, wrongfully

operate a drone over a human casualty, while in theater in the presence of partner forces, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Additional Charge I: Violation of the UCMJ Article 92

Specification (Violation of a Lawful General Order): In that . . . Edward R. Gallagher, . . . did, at or near, Mosul, Iraq, and at or near, San Diego, California on divers occasions from on or about May 2017 until on or about September 2018, violate a lawful general order, to wit: Paragraph 5(f) of SECNAVINST 5370.7D, dated 4 December 2014, by wrongfully retaliating against members of his Platoon for reporting his criminal actions.

Additional Charge II: Violation of the UCMJ Article 134

Specification (Obstructing Justice): In that . . . Edward R. Gallagher, . . . did, at or near, Mosul, Iraq, and at or near, San Diego, California on divers occasions from on or about May 2017 until on or about September 2018, wrongfully endeavor to impede an investigation, by attempting to discourage members of his Platoon from reporting his actions while deployed to Iraq in 2017, and that said conduct was to the prejudice of good order and discipline in the armed forces and was of a nature to bring discredit upon the armed forces.

Additional Charge III: Violation of UCMJ Article 80

Specification I (Attempted Murder): In that . . . Edward R. Gallagher, . . . did, at or near, Mosul, Iraq, on or about 18 June 2017, with premeditation, attempt to kill a noncombatant male by shooting him with a loaded firearm.

Specification II (Attempted Murder): In that . . . Edward R. Gallagher, . . . did, at or near, Mosul, Iraq, on or about July 2017, with premeditation, attempt to kill a noncombatant female by shooting her with a loaded firearm.

Ex. B at 2–5.

///

b.   Substantial Truth Doctrine

Second, Defendant argues that the majority of the statements in question are not actionable because of the "substantial truth doctrine."  Mot. at 27.  Because Defendant's statements are substantially true accounts of Plaintiff's court martial proceedings, and because "the gist or sting of [Defendant]'s reporting" is "that Plaintiff was a Navy SEAL who bragged about killing a wounded teen-aged captive, was turned in by other SEALs, and admitted to killing unarmed civilians," Plaintiff cannot show that any of the allegedly false statements would have a different effect on a reader's mind than the pleaded truth. Mot. at 27–28 (citations omitted).  Further, most of the alleged false statements identify minor inaccuracies that do not materially alter the truth of the statements and are therefore nonactionable.  *Id.* at 28–29.  Finally, because the statements concern matters of public concern, Plaintiff bears the burden of establishing falsity.  *Id.* at 29.  However, the FAC largely fails to plead falsity.  *Id.*  Plaintiff largely ignores this argument and only claims, as to one statement pleaded in paragraph 56.a of the FAC, that it is not "substantially true." Opp'n at 25.

"Under California law, [a d]efendant can defeat a libel action by proving that the allegedly libelous publication, although not literally true in every detail, is substantially true in its implication, that the gist of the article, when read as a whole, is true." *Wynberg v. Nat'l Enquirer, Inc.*, 564 F. Supp. 924, 927 (C.D. Cal. 1982) (citations omitted).  "Thus, 'the statement is not considered false unless it "would have a different effect on the mind of the reader from that which the pleaded truth would have produced."'" *Issa*, 31 Cal. App. 5th at 708 (quoting *Masson v. New Yorker Magazine, Inc*., 501 U.S. 496, 516–517 (1991)).  "[I]f a statement can reasonably have been understood to make a defamatory charge—a legal issue—'it is for the trier of fact to determine if the readers did so understand it,'" and thus, "the issue of whether a statement is true or substantially true is normally considered to be a factual one." *Hughes v. Hughes*, 122 Cal. App. 4th 931, 937 (2004) (citations omitted).

///

c.      Opinion

Third, Defendant claims that some of the statements at issue are opinion and therefore nonactionable, *see* Mot. at 29, particularly because Defendant discloses his sources and the facts on which his opinions are based, *see id.* at 31.  Thus, Plaintiff "simply challenges mere differences of opinion." *Id.*  Plaintiff argues that "the articles at issue are presented as factual accounts of what happened at [his] trial from a legitimate and well-established national news media source," and therefore "[t]he reasonable expectation of the audience was that they were reading an accurate description of what happened in the courtroom and of what was contained in the investigative record from a source worthy of belief." Opp'n at 31–32.  Plaintiff further claims that "those very 'facts' and 'sources'" that Defendant claims to disclose are false. *Id.* at 33.

"Because defamation requires a falsehood, it is sometimes said that an opinion, which is neither true nor false, is not actionable.  This is an oversimplification.  Statements of opinion do not enjoy blanket protection.  The issue is whether the statement of opinion implies a statement of fact.  Statements of opinion that imply a false assertion of fact are actionable.'" *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 685 (2017) (citing *Franklin v. Dynamic Details, Inc.*, 116 Cal. App. 4th 375, 384, 385 (2004)).  "The crucial question of whether challenged statements convey the requisite factual imputation is ordinarily a question of law for the court." *Id.* at 686 (citing *Summit Bank v. Rogers*, 206 Cal. App. 4th 669, 696 (2012)) (internal quotation marks omitted).  "To make this determination, we apply a totality of the circumstances test.  First, we examine the language of the statement itself, to determine whether the words are understood in a defamatory sense.  Second, we examine the context in which the statement was made." *Id.* (citing *Franklin,* 116 Cal. App. 4th at 385).

d.      Of and Concerning

Finally, Defendant alleges that some of the statements at issue are not "of and concerning" Plaintiff, and thus those statements are not actionable defamation.  Mot. at 31.  Defendant argues that many of the "statements may *reference* [Plaintiff] or the [court

martial] proceedings as a whole, they do not contain a factual assertion about *Plaintiff*, but rather some named or unnamed third party." *Id.* at 32. Because Plaintiff cannot bring claims on behalf of others, his defamation claims, to the extent premised on such statements, fail as a matter of law. *Id.* Plaintiff notes that he has pleaded that the statements are "of and concerning" him. Opp'n at 17. Plaintiff addresses the argument specifically as to the statements alleged in paragraphs 62, 72, and 77, *see id.* at 25–28, and argues generally that "[t]he issue is whether the statements are susceptible to negative innuendo about the plaintiff, regardless of whether the statements are true or about other persons," *id.* at 30 (citation omitted).

"The First Amendment requires a plaintiff to establish that the statement on which the defamation claim is based is 'of and concerning' the plaintiff." *D.A.R.E Am. v. Rolling Stone Mag.*, 101 F. Supp. 2d 1270, 1289 (C.D. Cal. 2000), *aff'd*, 270 F.3d 793 (9th Cir. 2001) (citations omitted). "To satisfy this requirement, 'the plaintiff must effectively plead that the statement at issue either expressly mentions him or refers to him by reasonable implication.'" *Id.* at 1289–90 (quoting *Blatty v. N.Y. Times Co.*, 42 Cal. 3d 1033, 1046 (1986)). "The statements at issue are to be examined in context, and considering the totality of the circumstances." *Id.* at 1290 (citing *Isuzu Motors, Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1044 (C.D. Ca. 1998)). At its core, "[t]he 'of and concerning' or specific reference requirement limits the right of action for injurious falsehood, granting it to those who are the direct object of criticism and denying it to those who merely complain of nonspecific statements that they believe cause them some hurt. To allow a plaintiff who is not identified, either expressly or by clear implication, to institute such an action poses an unjustifiable threat to society." *Blatty*, 42 Cal. 3d at 1044.

e.    Adequacy of Remaining Challenged Statements

Given that Defendant raises multiple challenges to each of the remaining statements, the Court will address each statement individually to determine if, when analyzed in context, the statement communicates the "gist" or "sting" of Plaintiff's court martial proceedings or if another privilege applies.

<u>i.</u>     <u>June 3, 2019 Article</u>

On June 3, 2019, Defendant published an article in The New York Times titled "Judge Removes Prosecutor in Navy SEAL's War Crimes Court-Martial." Ex. 6, ECF No. 26-9. Plaintiff alleges claims based on three statements in this article. *See* FAC ¶ 50.

**Paragraph 50(a): "In court, the prosecutor did not speak."**—Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 2. However, Plaintiff acknowledges that this statement is "not defamatory in itself," FAC ¶ 50(a), and does not assert any defamation claims based on this statement, *see id.* ¶¶ 94, 101, 105. Accordingly, the Court will not address this particular statement, which is apparently only offered for context.

**Paragraph 50(b): "Hoping to track down the source of the leaks, Commander Czaplak, working with Naval Criminal Investigative Service agents, sent emails to defense lawyers in May that had hidden monitoring software embedded in them, allowing prosecutors to track who forwarded and who received the emails, court documents show."**—Plaintiff claims this statement is defamatory by implication. *See* FAC ¶ 105. Plaintiff argues that Defendant "acts as an apologist for CDR Czaplak, ascribing a supposedly virtuous motive" to him that was rejected by the judge. *Id.* ¶ 50(b). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 2.

Although the statement appears within the broader context of an article about Plaintiff's court martial, considering the totality of the circumstances, the Court agrees with Defendant that this statement cannot be reasonably construed, either expressly or impliedly, as being "of and concerning" Plaintiff. *See, e.g.*, *John Doe 2 v. Superior Ct.*, 1 Cal. App. 5th 1300, 1316 (2016) (finding statement "'*If* Vitality misinformed you or Sony as to its ownership or profit participants in any way, please take my email into consideration' . . . communicates no false or defamatory facts 'of and concerning'

Hydraulx," despite allegation that the two companies share owners, offices, and infrastructure); *RingCentral, Inc. v. Nextiva, Inc.*, No. 19-CV-02626-NC, 2021 WL 2476879, at *6 (N.D. Cal. June 17, 2021) (finding fake positive reviews of the defendant posted by the defendant not defamatory as to the plaintiff as a matter of law because they "neither expressly nor impliedly communicate anything about [the plaintiff]"). Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

Paragraph 50(c): **"Leaked investigative documents in the Gallagher case include detailed descriptions from SEALs in the chief's platoon of their leader indiscriminately spraying civilian neighborhoods in Iraq with rockets and heavy machine gun fire . . . ."**—Plaintiff claims this statement is libelous, *see* FAC ¶ 94, and was "fabricated by [Defendant] alone," *id.* ¶ 50(c). Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. Mot. Ex. A at 2.

The charge sheet includes allegations that Plaintiff "wrongfully and willfully discharge[d] a firearm, to wit: firing at noncombatants, under circumstances such as to endanger human life . . . ." Ex. B at 3. The Court acknowledges that whether the fair and true reporting privilege applies to the challenged statement is a close call because the court martial proceedings included allegations that Plaintiff discharged a firearm at civilians. However, firing "a firearm . . . at noncombatants" has a different effect on the average reader than "spraying civilian neighborhoods in Iraq with rockets and heavy machine gun fire." Additionally, the Court cannot examine whether Defendant's statement is substantially true because Defendant has not identified for the Court the information in the investigative documents to support this defense. Ultimately, the Parties disagree "as to what was contained in the report." *Blatt*, 432 F. Supp. 3d at 1171 (quoting *Healthsmart*, 7 Cal. App. 5th at 431). As the information in this statement is not set forth in the charge sheet and there is a dispute as to whether the facts in the challenged statement are contained in the investigative documents, this is a question of fact for the jury. *See id.* Therefore, the Court **DENIES** Defendant's Motion as to this paragraph.

ii.     June 17, 2019 Article

On June 17, 2019, Defendant published an article in The New York Times titled "Navy SEAL Edward Gallagher Goes on Trial for War Crimes."  Ex. 7, ECF No. 26-10.  Plaintiff alleges claims based on four statements in this article.  *See* FAC ¶ 52.

**Paragraph 52(a): "They said he . . . ordered SEALs to fire rockets and machine guns at neighborhoods with no clear targets."**—Plaintiff claims this statement is libelous.  *See* FAC ¶ 94.  Plaintiff alleges that this statement "is a recycling of [Defendant]'s prior false claims."  *Id.* ¶ 52(a).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 3.  As the Court found *supra* regarding paragraph 50(c), the Parties dispute whether Defendant's allegations regarding indiscriminate shooting with rockets and machine guns were part of Plaintiff's court martial proceedings.  As this is a factual dispute and beyond the scope of the present Motion, the Court **DENIES** Defendant's Motion as to this paragraph.

**Paragraph 52(b): "Snipers told investigators that they saw Chief Gallagher shoot a school-age girl in a flower-print hijab who was walking with other girls on a riverbank."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 94, 105.  Plaintiff alleges that only one witness made this claim, and only after originally claiming ISIS shot the girl.  *Id.* ¶ 52(b).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 3.

Here, Plaintiff admits that one witness claimed he shot a young girl, *see* FAC ¶ 52(b), and the charge sheet includes allegations that Plaintiff shot "a noncombatant female person," *see* Ex B. at 2.  Although Plaintiff alleges that Defendant incorrectly reported the number of witnesses supporting this charge, and Plaintiff claims the witness previously changed his story, these minor inaccuracies do not change the gist or sting of the article.  The article recounts the charges against Plaintiff, which include "shooting unarmed civilians in Iraq in 2017, including a school-age girl[.]"  Ex. 7, ECF No. 26-10.  It is

undisputed that Plaintiff was charged with shooting an unarmed girl and at least one witness made this claim; therefore, the fair and true report privilege bars this claim. *Dickinson v. Cosby*, 17 Cal. App. 5th 655, 691 (2017) ("[I]t is sufficient if the substance of the charge be proved true, irrespective of slight inaccuracy in the details."); *see also Carver*, 135 Cal. App. 4th at 352 (holding a news article misstating the number of medical board complaints against a doctor was substantially true, and that the "essential point" was that the plaintiff had received an "unusually large number" of medical board complaints). Accordingly, this statement is shielded from liability by the fair and true reporting privilege, and the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 52(c): "However, at least one SEAL who initially told investigators he saw the stabbing has apparently recanted."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105.  Plaintiff claims this witness never supported Defendant's version of events, and only said he saw Plaintiff "stick him in the abdomen post-mortem as a 'dead check.'" *Id.* ¶ 52(c).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 3.

This statement is protected by the fair and true reporting privilege.  Plaintiff was charged with premeditated murder, and the charge sheet alleges that Plaintiff killed the victim by "stabbing him in the neck and body with a knife."  Ex. B at 2.  Plaintiff misconstrues the challenged statement, which does not specify where the witness originally told investigators he saw Plaintiff stab the man.  As the allegation that Plaintiff stabbed the victim is undisputedly contained in the charge sheet, the statement is protected by the fair and true reporting privilege.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 52(d): "The Gallagher case was rocked in May by revelations that the Navy's lead prosecutor, Cmdr. Christopher Czaplak, and agents of the Naval Criminal Investigative Service had tried to identify the source of leaks by sending**

41

**emails embedded with hidden tracking software to defense attorneys and a journalist for Navy Times."**—Plaintiff claims this statement is defamatory by implication. *See* FAC ¶ 105. Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 3. For the reasons provided *supra* with regard to the similar statement alleged in paragraph 50(b), the Court finds that this statement is not "of and concerning" Plaintiff and therefore **GRANTS** Defendant's Motion as to this paragraph.

### iii.   June 20, 2019 Article

On June 20, 2019, Defendant published an article in The New York Times titled "Navy SEAL War Crimes Witness Says He Was the Killer." Ex. 8, ECF No. 26-11. Plaintiff alleges claims based on three statements in this article. *See* FAC ¶ 56.

**Paragraph 56(a): "'You can stand up there, and you can lie about how you killed the ISIS prisoner so Chief Gallagher does not have to go to jail,' a Navy prosecutor, Lt. Brian John, told him. Special Operator Scott then looked over from the witness stand toward Chief Gallagher, whose wife and two of his children were in the courtroom. 'He's got a wife and family,' Special Operator Scott said. 'I don't think he should spend the rest of his life in prison.'"**—Plaintiff claims this statement is defamatory by implication. *See* FAC ¶ 105. Plaintiff claims that "these two statements were not related to one another" and "[t]he quoted answer was to an entirely different question." *Id.* ¶ 56(a). Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 3.

Plaintiff does not dispute that Special Operator Scott said this quote on the witness stand.[8] *See* FAC ¶ 56(a). Plaintiff instead bases his defamation claim on the allegation

---

[8] Plaintiff does claim that Special Operator Scott said, "I don't believe he should be spending his life in prison," instead of the quote Defendant reported, which was "I don't think he should spend the rest of his life in prison." FAC ¶ 56(a). However, these changes are so minor that they do not change the meaning of the statement, and Plaintiff only argues that the quotes were taken out of context, not that Special Operator Scott was misquoted. *See id.*

that Special Operator Scott was instead answering a question asked by Plaintiff's counsel about whether Special Operator Scott "was now telling this story because he didn't 'want an innocent man to go to jail?'" *Id.* The gist or sting of the article is that Special Operator Scott testified at Plaintiff's trial that he, not Plaintiff, killed the wounded captive in Iraq. *See* Ex. 8. Although the questions asked by the Navy prosecutor and Plaintiff's counsel were phrased differently—the most significant difference being that Plaintiff's counsel referred to Plaintiff as "an innocent man," and the Navy prosecutor referred to Plaintiff as "Chief Gallagher"—the questions were substantially the same. Therefore, Special Operator Scott's answer is not taken out of context such that the truth would have a different effect on the mind of the reader. *See Issa*, 31 Cal. App. 5th at 708. The statement is protected by the fair and true reporting privilege and cannot serve as a basis for an allegation of defamation. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 56(b): "In the military court in San Diego this week, several SEALs said that since reporting their chief's actions, they had received online death threats, and at least one had begun carrying a concealed weapon."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105. Plaintiff alleges "at this point, the SEALS had actually testified that they had *not* received any death threats," and that one testified he had applied for a concealed carry permit. *Id.* ¶ 56(b). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 4.

In this article, Defendant reports that Plaintiff "wrote to fellow SEALs about his accusers betraying the brotherhood, and asked them to ostracize his accusers." Ex. 8. The gist or sting of the article is that the SEALs faced pressure inside the Navy and externally regarding whether to come forward with allegations against Plaintiff. Indeed, the charge sheet includes allegations that Plaintiff "discourage[d] members of his Platoon from reporting his actions." Ex. B at 2. Whether the SEALs had received death threats at this

point and whether one carried a concealed weapon are minor details that do not change the gist or sting of the article. *See, e.g.*, *Reader's Dig. Ass'n v. Superior Ct.*, 37 Cal. 3d 244, 262 n.13 (1984) ("If the substantial imputations be proved true, a slight inaccuracy in the details will not prevent a judgment for the defendant, if the inaccuracy does not change the complexion of the affair so as to affect the reader of the article differently than the actual truth would." (citations and quotation marks omitted)). These are minor inaccuracies protected from liability by the fair and true reporting privilege. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 56(c): "Chief Gallagher then left the battle area to drive to a command post about two miles away."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105. Plaintiff claims he "was only about 1500 meters" away, and that Defendant fails to disclose "that the battle had ended and they were ordered back to the compound." *Id.* ¶ 56(c). Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 3. The Court finds that this statement falls within the fair and true reporting privilege. Whether the command post was two miles or 1500 meters away does not have a different effect on the mind of the average reader. This statement is substantially true, and therefore Plaintiff's claims for libel and defamation by implication cannot survive. Although Plaintiff alleges that Defendant failed to disclose some contextual information as to why he drove to the command post, this information is ultimately background material that does not change the sting or gist of the article. Defendant is shielded from liability by the fair and true reporting privilege. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>iv.</u>    <u>June 26, 2019 Article</u>

On June 26, 2019, Defendant published an article in The New York Times titled "Navy SEAL Whose Testimony Roiled War-Crimes Trial May Face Perjury Charge." Ex. 9, ECF No. 26-12. Plaintiff alleges claims based on six statements in this article. *See* FAC ¶ 57.

**Paragraph 57(a): "Special Operator Scott, who made eye contact with Chief Gallagher and with Timothy Parlatore, the chief's defense lawyer, several times during his testimony, seemed unshaken by the accusation."**—Plaintiff claims this statement is libelous. *See* FAC ¶ 94. He argues that "[Defendant] was in the back row, behind [himself] and his attorneys, . . . and not in a position to possibly make this theatrical (and false) observation." *Id.* ¶ 57(a). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 4.

It is clear the challenged statement is based on Defendant's observations and opinions in the courtroom. In order to determine whether this statement is actionable opinion, the Court examines whether the challenged statement conveys a false factual imputation. *See Dickinson*, 17 Cal. App. 5th at 685–86. Here, Plaintiff argues Defendant could not have made these observations given his position in the courtroom but fails to adequately allege a false fact Defendant is asserting in this statement. Prior to this passage, the article states that the Navy prosecutor "angrily accused Special Operator Scott of lying[.]" Ex. 9. Special Operator Scott's "unshaken" reaction is in response to being called a liar, which would imply the fact that he was telling the truth on the stand when he said that he killed the captive in Iraq. Plaintiff has not alleged that Defendant's observation conveys a false fact, and no false imputation is clear to the Court. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph as the statement is unactionable opinion.

**Paragraph 57(b): "When a prosecutor asked Special Operator Scott in court last week why he had waited until he was on the stand to assert that he had killed the captive, the medic replied that Chief Gallagher had a wife and family, and said, 'I don't think he should spend the rest of his life in prison.'"**—Plaintiff claims this statement is defamatory by implication. *See* FAC ¶ 105. Plaintiff once again argues that "[Defendant] intentionally cobbled together separate questions and answers from separate

parts of the proceeding in an effort to intentionally misrepresent SO1 Scott's testimony." *Id.* ¶ 57(b).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 4.  The Court previously examined these statements and Plaintiff's allegations that the quotes were taken out of context *supra* regarding paragraph 56(a).  For the reasons discussed *supra*, the Court finds that this statement is shielded from liability by the fair and true reporting privilege.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 57(c): "Navy investigative documents obtained by The New York Times show that investigators had asked Special Operator Scott a number of times, in the presence of other agents and lawyers, to detail the cause of the captive's death."**—Plaintiff claims this statement is libelous.  *See* FAC ¶ 94.  Plaintiff alleges "the leaked documents show no such exchanges, as investigators never discussed the cause of death." *Id.* ¶ 57(c).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 4.  Here, the Court cannot reasonably find that this statement expressly or impliedly refers to Plaintiff.  Considering the totality of the circumstances, this is a "nonspecific statement[] that [Plaintiff] believe[s] cause[s him] some hurt." *Blatty*, 42 Cal. 3d at 1044.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 57(d): "The Navy official said that Naval Criminal Investigative Service agents and Navy prosecutors would be able to testify in a perjury trial that the medic had repeatedly given them a very different account of the captive's death: that he saw Chief Gallagher stab the captive two or three times, not once; that he saw blood rushing from the stab wounds; that the wounds were fatal; and that Special Operator Scott had watched the captive stop breathing and die from those wounds."**—Plaintiff claims this statement is defamatory by implication, *see* FAC ¶ 105, because, "[e]ven if [Defendant's] alleged source made these statements, [Defendant] was

fully aware that this was untrue" based on "facts that were contained in the improperly leaked records reviewed by [Defendant] long before this article was written," *id.* ¶ 57(d). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 4.

Even if Defendant knew the challenged statement was false, it is still protected by the fair and true reporting privilege. *See, e.g.*, *McClatchy Newspapers, Inc. v. Superior Ct.*, 189 Cal. App. 3d 961, 974 (Ct. App. 1987) (finding fair and true reporting privilege applies even where reporter knew statement made in proceeding was false). The allegations regarding the captive's death are contained in the charge sheet, *see* Ex. B at 2, and this statement is a fair and true report of the proceedings. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 57(e): "In court, some of the SEALs said they had received threats and had begun carrying weapons for self-defense."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105. Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 5. The Court previously analyzed a similar challenged statement *supra* regarding paragraph 56(b). These statements are substantively similar such that for the reasons stated *supra*, the Court finds the fair and true reporting privilege shields Defendant from liability. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 57(f): "[Dalton Tolbert] told the court that he believes that he will probably be cut from SEAL Team 6 because of his part in the trial and the public attention it has drawn."**—Plaintiff claims this statement is defamatory by implication. *See* FAC ¶ 105. Plaintiff alleges "SO1 Tolbert was responding to the fact that he threatened to burn down the courthouse, and stated in text messages that his new teammates at SEAL Team 6 enjoy killing civilians." *Id.* ¶ 57(f). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of

the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 5. The Court agrees with Defendant that this statement, considered in context, cannot be reasonably construed, even implicitly, to be "of or concerning" Plaintiff. Further, it clearly expresses Tolbert's non-actionable opinion of what might happen rather than a statement of fact, regardless of what that opinion may have concerned. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>v.</u>     <u>July 2, 2019 Article</u>

On July 2, 2019, Defendant published an article in The New York Times titled "Navy SEAL Chief Accused of War Crimes Is Found Not Guilty of Murder." Ex. 10, ECF No. 26-13. Plaintiff alleges claims based on four statements in this article. *See* FAC ¶ 59.

**Paragraph 59(a): "Some of the platoon members who spoke out were called traitors in a closed Facebook group and were threatened with violence. In court, some said they had started carrying weapons for self-defense."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105. Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 5. These statements are substantively similar to the statement challenged in paragraph 56(b). For the reasons stated *supra*, the Court finds the fair and true reporting privilege shields Defendant from liability. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 59(b): "The SEAL command initially downplayed the platoon members' reports about the chief, and did not start an investigation of the alleged crimes for more than a year, allowing the trail of evidence to grow cold."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 94, 105. Plaintiff alleges "the evidence demonstrated that the reports were not made until well after the platoon had returned home from deployment." *Id.* ¶ 59(b). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected
///

1  opinion, because of the fair and true reporting privilege, and because the statement is not

2  "of and concerning" Plaintiff.  *See* Mot. Ex. A at 5.

3  Plaintiff appears to dispute the timeline presented by Defendant as to when SEALs

4  made reports and when an investigation was started.  *See* FAC ¶ 59(b).  However, the

5  charge sheet includes allegations that Plaintiff "at or near Mosul, Iraq, on divers occasions

6  during his deployment in 2017, wrongfully endeavor[ed] to impede an investigation by

7  attempting to discourage members of his Platoon from reporting his actions while in Iraq

8  during his deployment in 2017."  Ex. B at 3.  The statement is substantially true because

9  the essential point was that SEALs reported Plaintiff, and Plaintiff impeded the Navy's

10  investigation.  *See, e.g.*, *Carver*, 135 Cal. App. 4th at 352.  Therefore, the challenged

11  statement is shielded from liability under the fair and true reporting privilege, and the Court

12  **GRANTS** Defendant's Motion as to this subparagraph.

13  **Paragraph 59(c): "And a key witness changed his story on the stand to favor**

14  **Chief Gallagher . . . .  His testimony also deviated in other significant ways from what**

15  **he had told investigators before trial."**—Plaintiff claims this statement is libelous and

16  defamatory by implication.  *See* FAC ¶¶ 94, 105.  Plaintiff alleges that "Scott's testimony

17  did not deviate from his prior statements in any way," and "the prosecutor was unable to

18  confront SO1 Scott with a single prior inconsistent statement."  *Id.* ¶ 59(c).  However,

19  Plaintiff admits that the witness "could provide additional information that prosecutors had

20  inexplicably failed to ever ask from him" after he received immunity.  *Id.*  Defendant argues

21  that this statement is not defamatory due to the substantial truth doctrine, because it is

22  protected opinion, because of the fair and true reporting privilege, and because the

23  statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 5.  This statement is

24  protected by the fair and true report privilege.  Although the Parties characterize Special

25  Operator Scott's testimony on the stand in different ways, Plaintiff admits the information

26  was new compared to what he had told investigators previously.  The Court must allow

27  Defendant a certain amount of room for literary license.  *See, e.g.*, *Reader's Dig. Ass'n*, 37

28  ///

Cal. 3d at 262 n.13.  Ultimately, this is a fair and true statement of events at the underlying proceeding, and the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 59(d): "SEALs testified that after giving the fighter first aid, Chief Gallagher, a trained medic, stabbed the fighter repeatedly in the neck . . . .  During two weeks of testimony, two SEALs testified that they had seen Chief Gallagher stab the captive in the neck for no clear reason."**—Plaintiff claims this statement is libelous, *see* FAC ¶ 94, as "only a single witness . . . ever testified that he saw any stabbing in the neck," *id.* ¶ 59(d).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 5.  As the Court has found previously, minor misstatements such as how many witnesses testified at trial are protected under the fair and true reporting privilege.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>vi.   July 8, 2019 Podcast</u>

On July 8, 2019, Defendant appeared on the podcast "The Daily" by The New York Times.  Plaintiff alleges claims based on four statements Defendant made in this podcast.  *See* FAC ¶ 61.

**Paragraph 61(a): "SEALs are engaged in that battle.  But people testify that when he hears it's actually an ISIS captive, he says, no one touch him.  He's mine.  And he then drives two or three miles back, away from the fight, to their outpost to see this fighter.  Everybody agrees about that."**—Plaintiff claims this statement is slander and defamation by implication.  *See* FAC ¶¶ 101, 105.  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 6.  Once again, Plaintiff claims that he "was in a position 1500 meters forward, not two to three miles away, and they were called back by the task force commander because the battle was over."  FAC ¶ 61(a).  The Court previously analyzed a similar statement *supra* regarding paragraph 56(c).  For the reasons stated *supra*, the Court finds Defendant is shielded from liability by the fair and true

///

reporting privilege.    Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 61(b): "But then two SEALs testify that Chief Gallagher, for no clear reason, for reasons that even when pressed on the stand, they couldn't offer any insight into, Chief Gallagher pulls out this custom knife and stabs the fighter repeatedly in the neck."**—Plaintiff claims this statement is slander.  *See* FAC ¶ 101.  Once again, Plaintiff claims that Defendant "invented an additional witness that does not exist." *Id.* ¶ 61(b).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 6.  The Court previously examined Plaintiff's claim that there was one witness, not two, who testified to this information.  For the reasons stated *supra* regarding paragraph 52(b), this statement is substantially true and protected from liability by the true and fair reporting privilege. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 61(c): "But when [SO1 Scott] gets to the part where the chief suddenly stabs the fighter in the neck, he starts to hem and haw.  Where he had told investigators he stabbed him two or three times, he says, well, I only saw him stab him once.  And I'm not sure how deep it went.  I didn't even see any blood.  I don't think those wounds would have killed him.  He just seemed stable after that.  And then I waited around until he asphyxiated.  And the prosecution starts getting flustered. And the prosecutor sat down from his examination, clearly perplexed about what was happening."**—Plaintiff claims this statement is slander and defamation by implication, *see* FAC ¶¶ 101, 105, as "[n]one of this was inconsistent with [Special Operator Scott's] pretrial statements to investigators, other than changing his imprecise 'probably 2-3 times' to the more precise statement that it was definitely once, but he didn't want to speculate about how many more," *id.* ¶ 61(c).  Plaintiff also alleges that, contrary to Defendant's characterization, "the prosecutor sat down satisfied that he had gotten the expected testimony."  *See id.*  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the

statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 6. The Court should liberally construe the fair and true reporting privilege. *See Sipple v. Found. For Nat'l Progress*, 71 Cal. App. 4th 226, 240 (1999) ("The courts have construed Civil Code section 47, subdivision (d), broadly[.]"). Additionally, Defendant is "permit[ted] a certain degree of flexibility/literary license." *Reader's Dig. Ass'n*, 37 Cal. 3d at 262 n.13. Viewing the challenged language in the context of the podcast as a whole, Defendant is recounting the witness's testimony with his own opinion of reactions of people in the courtroom. Defendant has captured the gist or sting of the official proceedings in the podcast. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 61(d): "The first thing that comes in my head is this is not supposed to happen. This is what happens in every TV court show you've ever seen. But it never actually happens in court. This is the type of perjury, take the fall at any cost type of behavior you see in a gang trial, not in the trial of elite commandos. And so everybody in the courtroom was shocked."**—Plaintiff claims this statement is slander and defamation by implication. *See* FAC ¶¶ 101, 105. Plaintiff takes issue with the emphatic statement that this was perjury and not "mak[ing ]room" for the possibility that it was the truth. *Id.* ¶ 61(d). Defendant argues that this statement is not defamatory because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 6. The Court finds that this is a statement of protected opinion. Defendant is making observations about reactions in the courtroom, and he is allowed a certain degree of literary license under the fair and true reporting privilege. *See Blatt*, 432 F. Supp. 3d at 1170. This statement in context is not understood to be Defendant relaying facts about Plaintiff's court martial. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

### vii.   October 18, 2019 Article

On October 18, 2019, Defendant published an article in The New York Times titled "The Navy Wants to Push Out Problem SEALs. But Trump May Get in the Way." Ex. ///

14, ECF No. 26-17.  Plaintiff alleges claims based on two statements in this article.  *See* FAC ¶ 62.

**Paragraph 62(a): "Special Operator Scott changed his story on the stand and prosecutors canceled the testimony of other witnesses, fearing they would do the same."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  Plaintiff alleges that SO1 Scott did not change his story, and "there was only one other potential witness who was not called, . . . likely because his testimony was unhelpful . . . , not any fear that he may change his story."  *Id.* ¶ 62(a).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 7.

As the Court previously found regarding paragraph 59(c), Defendant's statements that Special Operator Scott delivered different testimony from what he had previously told investigators is protected by the fair and true reporting privilege.  Further, whether the additional witnesses were not called because their testimony would be unhelpful or because they might change their story on the stand are minor, inconsequential details within the context of the article as a whole.  These facts "do[] not lead the reader to be affected differently by the report than he or she would be by the actual truth."  *Blatt*, 432 F. Supp. 3d at 1170.  Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 62(b): "Admiral Bolivar replied in a letter Aug. 1 that she found the chief's conduct reprehensible and had no intention of suspending his sentence."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  He alleges that "Admiral Bolivar made no such inflammatory statements, which were entirely fabricated by [Defendant]."  *Id.* ¶ 62(b).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 7.  Based on the record currently before the Court, Defendant has not carried his burden to show that this statement is substantially true.  *See Blatt*, 432 F. Supp. 3d at 1170 (finding defendant carries the burden to prove that each statement falls within

the scope of the privilege). Plaintiff claims that these statements "were entirely fabricated by [Defendant]," FAC ¶ 62(b), and in the present Motion Defendant "challenges only the legal sufficiency of a claim," *Planned Parenthood Fed'n of Am., Inc.*, 890 F.3d at 834. Because the Court cannot resolve factual disputes between the Parties, the Court **DENIES** Defendant's Motion as to this paragraph.

### viii.   October 29, 2019 Article

On October 29, 2019, Defendant published an article in The New York Times titled "Navy Reduces Punishment for SEAL in War Crimes Case." Ex. 16, ECF No. 26-19. Plaintiff alleges claims based on three statements in this article. *See* FAC ¶ 65.

**Paragraph 65: "Admiral Bolivar said that she found Special Operator Gallagher's behavior after his trial reprehensible."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 114, 125. Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 7. Based on the reasoning provided *supra* regarding paragraph 62(b), the Court **DENIES** Defendant's Motion as to this paragraph.

**Paragraph 65: "[A] star witness changed his story . . . ."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 114, 125. Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 7. The Court has already examined a similar statement *supra* regarding paragraph 59(c) and found it is protected by the fair and true reporting privilege. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 65(a): "When a wounded Islamic State fighter was brought in, three SEALs told investigators, they saw their chief stab the fighter in the neck, killing him."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 114, 125. Plaintiff alleges that only one witness made this claim, and Defendant "falsely invented an additional witness." *Id.* ¶ 65(a). Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting

privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 8.  As the Court previously found regarding paragraph 59(b), small inaccuracies in the number of witnesses who made claims contained in the charge sheet is shielded from liability by the fair and true reporting privilege.  *See, e.g.*, *Carver*, 135 Cal. App. 4th at 352.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>ix.</u>    <u>November 19, 2019 Article</u>

On November 19, 2019, Defendant published an article in The New York Times titled "Navy Wants to Eject From SEALs a Sailor Cleared by Trump, Officials Say."  Ex. 19, ECF No. 26-22.  Plaintiff alleges claims based on two statements in this article.  *See* FAC ¶ 50.

**Paragraph 72(a): "The move could put the SEAL commander, Rear Admiral Collin Green, in direct conflict with President Trump, who last week cleared the sailor, Chief Petty Officer Gallagher, of any judicial punishment in the war crimes case."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  He claims that "this statement, along with the very title of the article[, "Navy Wants to Eject From SEALs a Sailor Cleared by Trump, Officials Say,"] completely misrepresent the President's orders and the punishment that Chief Gallagher received."  *Id.* ¶ 72(a).  Defendant claims that "[t]he only thing the President did was to re-promote Chief Gallagher so that his pension would not be reduced."  *Id.*  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 8.

This statement is protected by the fair and true reporting privilege.  Although Plaintiff argues that President Trump's intervention "was not applied retroactively," Plaintiff acknowledges that he was re-promoted and his pension would not be reduced.  FAC ¶ 72(a).  Therefore, this statement is substantially true, and Defendant is shielded from liability.  Further, allowing Defendant some literary license, the title of the article is ///

a substantially true statement of the events.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 72(b): "In court testimony, multiple SEALs in the platoon said that they reported one killing the day it happened, and several times after that as well, but that the platoon commander, Lieutenant Portier, did not forward the report up the chain of command as required by regulations.  Lieutenant Portier was criminally charged with failing to report the murder; he denied the charges, and they were dropped after Chief Gallagher was acquitted.  Commander Breisch was the troop commander over Chief Gallagher and Lieutenant Portier in Iraq.  SEALs in the platoon testified that they told him repeatedly about the killings after the deployment, but were told to 'decompress' and 'let it go,' according to a Navy investigation. Commander Breisch was not charged."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  He alleges that the "decompress" and "let it go" statements were "related to complaints that [Plaintiff] had eaten the Powerbars from the platoon care packages," yet "the allegations of killings did not come until much later."  *Id.* ¶ 72(b).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 8.

Plaintiff was charged with "wrongfully endeavor[ing] to impede an investigation by attempting to discourage members of his Platoon from reporting his actions."  Ex. B at 3. When the SEALs in Plaintiff's platoon made reports is a minor detail, and this small inaccuracy does not change the underlying murder allegation.  The statement captures the gist or sting of the underlying proceeding, and the average reader would not change her opinion of the matter even if what Plaintiff alleges is true.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>x.</u>   <u>November 20, 2019 Article</u>

On November 20, 2019, Defendant published an article in The New York Times titled "As Admiral Moved to Expel a Navy SEAL, He Kept an Eye on Trump."  Ex. 20,

ECF No. 26-23.  Plaintiff alleges claims based on one statement in this article.  *See* FAC ¶ 73.

**Paragraph 73: "Mr. Trump intervened in the case several times in the Chief's favor."**—Plaintiff claims this statement is defamatory by implication, *see* FAC ¶ 125, as "[President Trump's] only involvement in the trial was to order Chief Gallagher released from the brig," *id.* ¶ 73.  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, and because of the fair and true reporting privilege.  *See* Mot. Ex. A at 8.  Based on the record before the Court, this statement is true.  Although Plaintiff claims that President Trump's only involvement was to order Plaintiff released from the brig, the record indicates President Trump intervened on multiple occasions.  Specifically, Plaintiff admits that President Trump commanded Plaintiff be released from the brig and issued an order to restore Plaintiff's rank.  FAC ¶¶ 66, 73.  Therefore, this statement is true and cannot maintain an allegation for defamation by implication.  The Court **GRANTS** Defendant's Motion as to this paragraph.

### xi.   November 21, 2019 Article

On November 21, 2019, Defendant published an article in The New York Times titled "Trump Reverses Navy Decision to Oust Edward Gallagher From SEALs."  Ex. 21, ECF No. 26-24.  Plaintiff alleges claims based on one statement in this article.  *See* FAC ¶ 74.

**Paragraph 74: "Mr. Trump intervened several times in his favor."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  Plaintiff alleges that Defendant "impl[ies] that this may be why [Plaintiff] was acquitted, rather than the evidence presented in court."  *Id.* ¶ 74.  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, and because of the fair and true reporting privilege.  *See* Mot. Ex. A at 8.  Considering the challenged statement in the context of the article, there is no implication that President Trump's intervention caused Plaintiff's acquittal.  Additionally, the Court examined a substantially similar statement *supra* regarding paragraph 73 and found the statement to be

true.  For the reasons stated previously, the Court **GRANTS** Defendant's Motion as to this paragraph.

xii.   November 23, 2019 Article

On November 23, 2019, Defendant and two coauthors published an article in The New York Times titled "Navy Is Said to Proceed With Disciplinary Plans Against Edward Gallagher." Ex. 23, ECF No. 26-26.  Plaintiff alleges claims based on one statement in this article.  *See* FAC ¶ 75.

**Paragraph 75: "The Pentagon had already been quietly fuming this month after Mr. Trump cleared three members of the armed services . . . ."**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 9.  Although Plaintiff is mentioned in the article, considering the totality of the circumstances, the Court finds that this statement cannot be reasonably construed, either expressly or impliedly, as being "of and concerning" Plaintiff.  Plaintiff is not the "direct object of criticism[.]"  *Blatty*, 42 Cal. 3d at 1044.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

xiii.   November 24, 2019 Article

On November 24, 2019, Defendant and two coauthors published an article in The New York Times titled "Esper Demands Resignation of Navy Secretary Over SEAL Case." Ex. 24, ECF No. 26-27.  Plaintiff alleges claims based on one statement in this article.  *See* FAC ¶ 76.

**Paragraph 76: "Several fellow SEALs reported that he had shot civilians and killed a captive Islamic State fighter with a custom hunting knife."**—Plaintiff claims this statement is libelous and defamatory by implication, *see* FAC ¶¶ 114, 125, challenging not only "the ongoing invention of extra witnesses" but also the "fabricated . . . detail about the 'custom hunting knife', a claim that the lead prosecutor had expressly denied in open court," *id.* ¶ 76.  Defendant argues that this statement is not defamatory due to the

58

substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 9. The Court previously found regarding paragraph 52(b) that minor inaccuracies on the number of SEALs who made reports or were witnesses at the court martial fall into the fair and true reporting privilege. *See supra*. Additionally, even assuming the "custom hunting knife" detail is false, this statement is protected under the fair and true reporting privilege because it does not lead the reader to be affected differently by the report. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>xiv.</u>    <u>November 24, 2019 Article</u>

On November 24, 2019, Defendant published an article in The New York Times titled "Who Is Edward Gallagher, the SEAL the Navy Wants to Expel?" Ex. 25, ECF No. 26-28. Plaintiff alleges claims based on one statement in this article. *See* FAC ¶ 77.

**Paragraph 77: "[A]fter deliberating for about two hours, the jury acquitted Chief Gallagher . . . ."**—Plaintiff claims this statement is libelous and defamatory by implication, *see* FAC ¶¶ 114, 125, as the jury deliberated for two days rather than two hours, *id.* ¶ 77. Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, and because of the fair and true reporting privilege. *See* Mot. Ex. A at 9. The slight discrepancy in time frame that the jury deliberated does not provide Plaintiff with an escape hatch from the substantial truth defense. *Cf. Gilbert v. Sykes*, 147 Cal. App. 4th 13, 28 (2007) (finding before and after photographs were not defamatory as a matter of law because they were "substantially accurate representations of what took place," regardless of whether "after" photo was mislabeled as to proximity to surgery). This is a fair and true report of the proceedings, and this minor inaccuracy does not change an average reader's opinion of the proceedings. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

<u>xv.</u>    <u>November 27, 2019 Article</u>

On November 27, 2019, Defendant published an article in The New York Times titled "Navy Drops Effort to Expel From SEALs 3 Officers Linked to Gallagher." Ex. 27, ///

ECF No. 26-30.  Plaintiff alleges claims based on one statement in this article.  *See* FAC ¶ 79.

**Paragraph 79: "When SEALs from Chief Gallagher's platoon took their accounts of the chief's actions to Commander Breisch, he did not immediately investigate, according to a Navy investigation report, and instead warned platoon members that pressing a criminal investigation could ruin their careers and they should 'decompress' and 'let it go.'"**—Plaintiff claims this statement is libelous and defamatory by implication.  *See* FAC ¶¶ 114, 125.  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, and because of the fair and true reporting privilege.  *See* Mot. Ex. A at 9.  The Court previously examined a substantively similar challenged statement regarding paragraph 72(b).  For the reasons provided *supra*, the Court **GRANTS** Defendant's Motion as to this paragraph.

### xvi.   December 27, 2019 Article

On December 27, 2019, Defendant published an article in The New York Times titled "Anguish and Anger From the Navy SEALs Who Turned In Edward Gallagher."  Ex. 29, ECF No. 26-32.  Plaintiff alleges claims based on three statements in this article.  *See* FAC ¶ 82.

**Paragraph 82(a): "They offer the first opportunity outside the courtroom to hear directly from the men of Alpha platoon, SEAL Team 7, whose blistering testimony about their platoon chief was dismissed by President Trump when he upended the military code of justice to protect Chief Gallagher from the punishment."**—Plaintiff claims this statement is libelous and defamatory by implication, s*ee* FAC ¶¶ 114, 125, as "[Defendant] intentionally and misleadingly presents the initial, unsworn statements of these witnesses, while refusing to report on how their actual testimony at trial completely fell apart," *id.* ¶ 82(a).  Plaintiff claims that Defendant "mischaracterizes [the trial testimony] as 'blistering' while making it seem as if the President ignored their testimony."  *Id.*  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of

the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 10.  As the Court has repeatedly noted, Defendant is allowed some artistic license pursuant to the fair and true reporting privilege when describing the underlying proceedings.   Therefore, disagreements over whether testimony was "blistering" is absolutely shielded from liability by the privilege.  The challenged statement is substantially true, and the details Plaintiff complains are omitted would not change the mind of the average reader regarding the underlying proceedings.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 82(b): "The video interviews and private group text conversations obtained by The Times do not reveal any coordinated deception among the SEALs in the chief's platoon.  Instead, they show men who were hesitant to come forward, but who urged one another to resist outside pressure and threats of violence, and to be honest."**—Plaintiff claims this statement is libelous and defamatory by implication. *See* FAC ¶¶ 114, 125.  He alleges that "the text messages, which were presented to the jury during the course of the trial, showed that the witnesses had bound together in a self-described 'sewing circle' to get their stories straight, with one witness openly admitting that he was willing to lie." *Id.* ¶ 82(b) (footnote omitted).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 10.

As the Court previously discussed, minor inaccuracies are protected by the fair and true reporting privilege.  Defendant stated that there was no "coordinated deception," which Plaintiff does not appear to dispute.  He instead alleges that "one witness openly admitt[ed] that he was willing to lie."  FAC ¶ 82(b).  Therefore, the challenged statement is substantially true, and shielded from liability.  The Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 82(c): "The platoon members told investigators that they tried repeatedly to report what they saw, but that the chain of command above them was**

**friendly toward Chief Gallagher and took no action.  Finally, in April 2018, they went outside the SEALs to the Naval Criminal Investigative Service.  Chief Gallagher was arrested a few months later."**—Plaintiff claims this statement is libelous and defamatory by implication, *see* FAC ¶¶ 114, 125, as "records show that it was their chain of command that took the allegations to NCIS in April immediately after the witnesses came forward," *id.* ¶ 82(c).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff.  *See* Mot. Ex. A at 10.  As the Court previously found, minor inaccuracies, such as discrepancies in the timeline of the Navy's investigation, are protected by the fair and true reporting privilege.  *See supra*.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

xvii.   <u>Documentary Series</u>

On December 27, 2019, The New York Times released an episode of its show The Weekly on FX Network titled "The Gallagher Effect."  Plaintiff alleges claims based on five editing choices or statements in this documentary.  *See* FAC ¶ 83.

**Paragraph 83:**  Plaintiff claims that *The Gallagher Effect* on FX Network was "edited in a manner designed to mislead the public," presenting "[i]nitial witness interviews . . . as fact, without any of the context about how those witnesses fell apart on the stand."  FAC ¶ 83.  He alleges that "Craig Miller's demonization of [Plaintiff] as 'freaking evil'" was similarly lacking in context from trial testimony.  *Id.*  Although Mr. Miller did make that statement at Plaintiff's court martial, Plaintiff alleges that Defendant should have included cross-examination testimony where Mr. Miller admitted "these statements had been an exaggeration."  *Id.*  Plaintiff appears to claim that the entire show is slanderous and defamatory by implication as a result.  *See* FAC ¶¶ 122, 125.  Defendant argues that the show is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege.  *See* Mot. Ex. A at 10.

The interviews of the SEALs were among the evidence that formed the basis of the judicial proceeding against Plaintiff.  The series as a whole is protected by the fair and true

62

reporting privilege because it communicates the gist or sting of the proceedings against Plaintiff. None of the statements were taken so out of context that they mischaracterize the allegations against Plaintiff. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 84(a): "And then, Eddie Gallagher's trial starts. The prosecution starts with their witnesses. Did you see him stab him? Yes, I did. Another SEAL comes up. Did you see him stab him? Yes, I did. The prosecutors present the evidence. They had a good case."**—Plaintiff claims this statement is slanderous and defamatory by implication, *see* FAC ¶¶ 122, 125, as it "completely invents a witness," *id.* ¶ 84(a). Defendant argues that this statement is not defamatory due to the substantial truth doctrine and the fair and true reporting privilege. *See* Mot. Ex. A at 10. As the Court discussed *supra*, minor inaccuracies such as how many witnesses testified at trial are protected under the fair and true reporting privilege. *See, e.g.*, *Carver*, 135 Cal. App. 4th at 352. Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 84(b): "Corey Scott changed his story on the stand. What Corey Scott had told investigators multiple times beforehand is [he stabbed him probably two or three times] . . . . The prosecutor sits down without having gotten any of the testimony he expected."**—Plaintiff claims this statement is slanderous and defamatory by implication. *See* FAC ¶¶ 122, 125. Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, because of the fair and true reporting privilege, and because the statement is not "of and concerning" Plaintiff. *See* Mot. Ex. A at 11. The Court previously examined a substantially similar statement regarding paragraph 61(c). For the reasons set forth *supra*, the Court finds the fair and true reporting privilege shields Defendant from liability for this statement. Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 84(c):** Plaintiff claims that Defendant "misleadingly . . . edited together the audio of SO1 Scott's testimony to match his prior false articles by juxtaposing a question from the prosecutor about whether SO1 Scott could lie with SO1 Scott's response

to a different question from defense counsel," FAC ¶ 84(c), and that this is slanderous and defamatory by implication, *see id.* ¶¶ 122, 125.  Defendant argues this is not defamatory because of the fair and true reporting privilege.  *See* Mot. Ex. A at 11.  The Court previously found with respect to paragraph 57(b) *supra* that Defendant's presentation of Special Operator Scott's testimony in this manner was a fair and accurate report of Plaintiff's court martial.  Accordingly, the Court **GRANTS** Defendant's Motion as to this paragraph.

**Paragraph 84(d): "This is not the story of one Chief who killed someone, it's the story of six or seven guys who said like no, we're gonna stand up and do the right thing."**—Plaintiff claims this statement is slanderous and defamatory by implication, *see* FAC ¶¶ 122, 125, as it "ignore[es] that Chief Gallagher was acquitted and the testimony of a few disgruntled members of the platoon was discredited," *id.* ¶ 84(d).  Defendant argues that this statement is not defamatory due to the substantial truth doctrine, because it is protected opinion, and because of the fair and true reporting privilege.  *See* Mot. Ex. A at 11.

This is an opinion statement protected by the First Amendment.  *See Partington v. Bugliosi*, 56 F.3d 1147, 1154 (9th Cir. 1995) (emphasizing the need to provide "room for expressions of opinion by commentators, experts in a field, figures closely involved in a public controversy, or others whose perspectives might be of interest to the public").  When viewed in the context of the documentary as a whole, the challenged statement constitutes "rhetorical hyperbole."  *See, e.g.*, *Clifford v. Trump*, 339 F. Supp. 3d 915, 922 (C.D. Cal. 2018).  Defendant is not asserting as a fact that Plaintiff killed the captive in Iraq; instead, he is giving his opinion on the proceedings.  Therefore, the Court **GRANTS** Defendant's Motion as to this paragraph.

### E.    Step 2: Sufficiency of IIED Claim

As to Plaintiff's IIED claim, Defendant argues that the claim must be dismissed as superfluous given that it is duplicative of Plaintiff's defamation claims.  Mot. at 32. Defendant further contends that the claim is deficient because the allegations fail to rise to the level of egregiousness or outrageousness required to support an IIED claim, *see id.* at

32–33, and because Plaintiff fails to assert that Defendant's conduct caused him "severe emotional distress," *id.*, as "allegations of suffering 'fear and anxiety' are insufficient," Reply at 14. Plaintiff counters that his IIED claim does not simply duplicate his defamation claims, for he alleges "that Defendant[]'s continued publications after being informed of the falsities, his actions in intentionally discouraging witnesses from cooperating with him, and his attempts to retry [Plaintiff] in the media, all while knowing that [Plaintiff] and his family were receiving graphic and disturbing threats as a result, was outrageous conduct beyond the bounds of decency that caused severe emotional distress." Opp'n at 40 (citing FAC ¶¶ 135–37).

"When a complaint alleges a defamation claim, as well as other causes of action based on the same allegations, the additional claims should be dismissed as surplusage." *Silva v. Hearst Corp.*, No. CV97-4142 DDP(BQRX), 1997 WL 33798080, at *3 (C.D. Cal. Aug. 22, 1997) (citing *Selleck v. Globe Int'l*, 166 Cal. App. 3d 1123, 1136 (1985)). Here, the Court finds that the IIED claim as alleged is duplicative of Plaintiff's preceding defamation claims. Although Plaintiff attempts to plead additional facts by alleging that Defendant continued publishing the articles "with the knowledge that [Plaintiff] and his family were receiving graphic and disturbing death threats as a result," FAC ¶ 136, ultimately, the claim "is based solely on the publication of the allegedly defamatory article[s]." *Silva*, 1997 WL 33798080, at *3. "[Plaintiff] cannot maintain a separate cause of action for mental and emotional distress where the gravamen is defamation." *Dworkin v. Hustler Mag., Inc.*, 668 F. Supp. 1408, 1420 (C.D. Cal. 1987) (citations omitted), *aff'd*, 867 F.2d 1188 (9th Cir. 1989); *see also Beckham v. Bauer Pub. Co., L.P.*, No. CV 10-7980-R, 2011 WL 977570, at *2 (C.D. Cal. Mar. 17, 2011) (granting anti-SLAPP motion as to IIED claim because the claim was "duplicative of the libel claim and based upon the same protected speech"); *Rudwall v. Blackrock, Inc.*, No. C06-2992 MHP, 2006 WL 3462792, at *6 (N.D. Cal. Nov. 30, 2006) (granting motion for judgment on the pleadings as to IIED claim where the plaintiff had "done nothing more than recite the *elements* of this cause of action without adding any new *factual* allegations

differentiating it from his libel claim"), *aff'd*, 289 F. App'x 240 (9th Cir. 2008). Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's IIED claim.[9]

## CONCLUSION

Based on the foregoing, the Court rules as follows:

1.     The Court **GRANTS** Defendant's Request for Judicial Notice (ECF No. 26-50).

2.     The Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion (ECF No. 26), as set forth above.  To the extent the Court denies Defendant's Motion to Dismiss specific statements in Plaintiff's Complaint, such denials are **WITHOUT PREJUDICE**.

3.     The Court **DISMISSES WITH PREJUDICE** Plaintiff's claims based on statements the Court found are privileged.  *See Simmons v. Allstate Ins. Co.*, 92 Cal. App. 4th 1068, 1073 (2001) ("Allowing a SLAPP plaintiff leave to amend the complaint once the court finds the prima facie showing has been met would completely undermine the statute by providing the pleader a ready escape from section 425.16's quick dismissal remedy.").

4.     As to those paragraphs stricken because Plaintiff fails to adequately identify the allegedly defamatory statements, the Court finds that leave to amend is appropriate. Plaintiff **MAY FILE** an amended complaint that addresses the deficiencies outlined as to these paragraphs within <u>thirty (30) days</u> of the date on which this Order is electronically docketed.  *Should Plaintiff fail to file an amended complaint by this date, this action will proceed on his surviving causes of action*.

**IT IS SO ORDERED.**

Dated:  September 27, 2021

*Janis L. Sammartino*

Hon. Janis L. Sammartino
United States District Judge

---

[9] Because the Court finds the IIED claim as pleaded is superfluous, the Court need not and does not address Defendant's other arguments as to the sufficiency of this claim.